177 So.2d 757 (1965)
In re ESTATE of Charles Colley KEMP, Deceased.
No. G-132.
District Court of Appeal of Florida. First District.
August 5, 1965.
Rehearing Denied August 31, 1965.
*758 Boggs, Blalock & Holbrook, Jacksonville, for appellant.
Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for appellee.
STURGIS, Judge.
The appellant is administrator of the estate of A.J. Herring, deceased, pending administration in the state of Georgia. He seeks reversal of an order of the County Judge's Court of Duval County, Florida, denying his petition for an extension of time in which to file suit against the estate of Charles Colley Kemp, deceased, pursuant to a $50,000 claim filed therein March 11, 1964, on behalf of the Herring estate for the alleged wrongful death of said A.J. Herring as the result of an automobile accident that occurred in Clay County, Florida. On March 20, 1964, the administratrix of the Kemp estate filed a formal objection to said claim and served copies thereof by registered mail upon the appellant and upon an attorney at law, both residents of Brunswick, Georgia, which attorney lodged the claim in the County Judge's Court of Duval County in his relation as attorney in fact and at law for the Herring estate.
The Herring estate did not bring suit or take any further action with respect to its said claim against the Kemp estate until August 3, 1964, which was more than four months after said objection to the claim was filed. On that date appellant filed in the Kemp estate a petition for an extention of time in which to file suit upon said claim, and two days later the administratrix *759 of the Kemp estate filed objections to said petition. On October 29, 1964, the court heard the petition and on November 4, 1964, denied same, hence this appeal.
It is established in this jurisdiction that even after the expiration of the time provided by Section 733.18(2), Florida Statutes, F.S.A., for filing suit on such claim, the County Judge's Court may, upon a showing of good cause, extend the time for filing such suit. The sole point of law involved on this appeal is whether the lower court, in the light of the facts and circumstances of this case, abused its judicial discretion in denying appellant's said petition.
Section 733.18(2), Florida Statutes, F.S.A., limiting the creditor or claimant against an estate to two calendar months from the date of service by registered mail or personal service of objection to the claim in which to bring appropriate suit, action or proceeding thereon, is not a statute of non-claim as is Section 733.16, Florida Statutes, F.S.A. It is defined, instead, as a statute wherein "the stated time limits operate as rules of judicial procedure." In re Jeffries' Estate, 136 Fla. 410, 181 So. 833, 838 (1938).
The petition for extension of time herein alleged that shortly after the death of A.J. Herring the attorney representing his estate entered into negotiations with a firm of insurance adjusters in Brunswick, Georgia, representing the insurance company which carried liability insurance on Charles Colley Kemp, the Florida decedent, and conducted same both before and after the subject claim was filed in the Kemp estate; that the appellant administrator of the Herring estate did not intend to make any claim against the assets of the Kemp estate, the inference being that he intended to press the claim only to the extent of the coverage afforded by the liability insurance. We pause to note that such was not the import of the claim filed and that we are unacquainted with any power of a personal representative of a decedent's estate to thus limit the estate's rights. Appellant does not indicate how such intention was to be made effective and cites no authority for the proposition that such benevolent intention has the legal effect of preserving his claim as against the insurer while protecting the Kemp estate against liability beyond the policy limits.
The petitioning administrator also alleged that the Kemp insurance carrier offered $19,500 in settlement of the Herring estate claim, that the personal representative of the Kemp estate had filed in the Herring estate a claim for the alleged wrongful death of said Charles Colley Kemp, which claim was pending, and that petitioner was lulled into a false sense of security by the negotiations he conducted with the liability insurance carrier in the Kemp estate looking toward settlement of the claim; further, that the filing of the Kemp claim in the Herring estate "confused the order of the claims" to the point that petitioner did not file suit against the Kemp estate within the statutory period of two months following the objections filed to his claim in the Kemp estate; and that he had been informed through his attorney that the insurance company was trying to work up an offer to submit in settlement of the claim against the Kemp estate.
At the hearing on said petition appellant presented as a witness Jack J. Lissner, Jr., Esq., of Brunswick, Georgia, the attorney who represented the Herring estate, and the appellee presented as its sole witness Charles J. Becton, the insurance adjuster's employee who had some contact with said attorney looking toward settlement.
Mr. Lissner testified that in February 1964, prior to filing the claim, he had negotiations with Mr. Charles J. Becton of the adjusting firm culminating in an offer to settle the claim for $19,500, which offer was submitted to the appellant administrator of the Herring estate who took the same under advisement, and that after some time had expired the offer was withdrawn; that *760 said attorney later came to Jacksonville and there consulted with counsel who prepared the subject claim, which he filed in the Kemp estate on March 11, 1964; that upon returning to Brunswick he wrote Mr. Becton that the claim had been filed and that he would like to reopen negotiations for settlement thereof. Mr. Lissner acknowledged receipt of the objection filed to the claim, accompanied by a cover letter from a representative of the estate. Mr. Lissner also testified that on some occasion after March 17, 1964, he discussed the claim with Mr. Becton and placed in Becton's hands copies of decedent Herring's tax returns for the last two years of his life, and that several weeks later he had a discussion with Becton concerning the amount of earnings which he (Lissner) was asserting on behalf of decedent Herring, at which time he asked Mr. Becton "for a figure." In that connection, however, witness Lissner said: "No definite mention of figure was ever mentioned. We were negotiating toward a settlement. That was the purpose of all of that, and some time elapsed." He also testified that on March 20, 1964 (which was subsequent to receiving the objection to the claim), the administratrix of the Kemp estate informed him that she would ask the insurance company to settle the claim so that the Kemp estate might be released from any further liability to the Herring estate; that on July 29, 1964, she directed him to the office of the insurance company where he called and talked with its manager, who informed him for the first time that "a statute had run and the file had been closed and there would be no further negotiations." Upon being asked whether he received any correspondence from any representative of the Kemp estate subsequent to March 20, 1964, or from Mr. Becton after that date, Mr. Lissner answered, "No sir; none at all, none at all." On cross-examination the witness testified that the last correspondence he had with Mr. Becton was on May 10, 1964, and that no figure for settlement other than $19,500, which was withdrawn, was ever quoted to him.
Mr. Becton, the insurance adjuster, testified that he negotiated with Mr. Lissner concerning settlement of the claim in question and that a $19,500 offer of settlement was made for a complete and final release of all claims, including a claim of one Ed Lyles (a third person who is not a party to these proceedings) whose claim was eventually barred because not filed against the Kemp estate within the time required by the non-claim statute, but that said offer was withdrawn before acceptance.
The facts in In re Goldman's Estate, 79 So.2d 846 (Fla. 1955), are substantially in accord with those in the case on review, except that there were no negotiations for settlement. In Goldman there was a claim for $34,620 damages said to accrue to the claimant as the result of the negligent operation of a motor vehicle by decedent Goldman in her lifetime. Decedent's administrator filed objections to the claim and on November 28, 1953, served a copy thereof by registered mail on the claimant. Nothing further transpired until August 30, 1954, when the administrator moved the County Judge's Court to deny the claim on the ground that claimant had not brought suit thereon within the time allowed by the statute. Claimant then filed a petition praying to be allowed an extension of time in which to bring such suit and as grounds therefor asserted that claimant's attorneys had not received a copy of the 1953 General Laws of Florida, containing an amendment to Section 733.18, Florida Statutes, F.S.A., whereby the time for filing such suit had been shortened, and were of the impression that claimant had twelve months in which to file such suit; further, that the claimant had to undergo an additional operation which had recently been performed, and that if her attorneys had known she was limited to a period of two months from service of such objection to the claim, they would have filed a timely petition for an extension of time in which to file suit in order to be certain of the amount of damages incurred by the claimant. The county judge entered an order holding that the *761 claimant had shown good cause for extending the time and allowing thirty days from the date of the order in which to file suit on the claim. On appeal to the circuit court the ruling was affirmed and on appeal to the supreme court the order of the circuit court was reversed. The supreme court, speaking through Mr. Justice Sebring, said:
"It is held in this jurisdiction that since the statute in question expressly authorizes the county judge, upon good cause shown, to extend the time for bringing suit, the statute is not a statute of non-claim, as is section 733.16, Florida Statutes, F.S.A., but is a statute wherein `the stated time limits operate as rules of judicial procedure.' In re Jeffries' Estate, 136 Fla. 410, 181 So. 833, 838. Therefore, its provisions limiting the time for filing suit may be relaxed, within the sound discretion of the court, so as to permit the filing of suit even when the motion for extension of time is not made until after the expiration of the limitation period. In re Jeffries' Estate, supra; Atlantic National Bank of Jacksonville v. Kirkwood, 152 Fla. 59, 10 So.2d 743. But, as is clear from the statute and the cited decisions, a cause sufficient to authorize an extension of time for filing suit must be a `good cause,' by which it is meant that `the adjudication is to be governed by a given standard of judicial action,' In re Jeffries' Estate, supra, contemplating `a substantial reason, one that affords a legal excuse,' or a `cause moving the court to its conclusion, not arbitrary or contrary to all the evidence,' and not mere `ignorance of law, hardship on petitioner, and reliance on [another's] advice.' 18 Words and Phrases, Good Cause, pp. 451, 455 et seq., citing Pines v. District Court in and for Woodbury County, 233 Iowa 1284, 10 N.W.2d 574; Sylvester v. Olson, 63 Wash. 285, 115 P. 175; In re Zweig's Will, 145 Misc. 839, 261 N.Y.S. 400. Accord Ellard v. Godwin, Fla., 77 So.2d 617.
"Inasmuch as the only change accomplished by the 1953 amendment to section 733.18(2), Florida Statutes 1951, F.S.A., was to substitute the word `shall' for `may,' but to leave the original statute otherwise intact, we do not think that the attorneys for the claimant showed good cause for an extention of time by their assertion in their petition before the county judge that because they did not have access to a copy of the 1953 amendment they did not realize that its passage `had the effect of shortening the time for filing suit to two months, but rather were under the impression that they had twelve months in which to file the proper suit.' For, whatever may have been the purpose of the legislature in substituting the word `shall' for the word `may,' there cannot be the slightest doubt that under the plain language of either the original statute or the amendment thereto an objector had the power, if he chose to exercise it, to reduce the period of time within which a claimant could bring suit upon his claim by simply filing and serving his objections upon the claimant, by which act the time for filing suit was reduced to `two calendar months from the date of such service.' Therefore, the attorneys were on notice, under the provisions of either statute, that when they were served by the administrator with objections to the claim a period of two months thereafter was all that was allowed for instituting suit, unless, for good cause shown, the time was extended. Certainly, the averment in the petition to the effect that they did not understand that such were the plain requirements of the law could not be held to constitute good cause for the extension of such period of time."
*762 In the more recent case of Smoak v. Graham, 167 So.2d 559 (Fla. 1964), the Florida Supreme Court, speaking through Mr. Justice Drew, reiterated the rule that the judicial discretion vested in the county judge should be sustained if it appears that the court's conclusion is not arbitrary or contrary to all the evidence.
Settlements are favored in the law and the parties to prospective or pending litigation are encouraged to maintain an atmosphere in which negotiations looking toward settlement can be freely conducted; and they may do so without jeopardizing their right to pursue any relief available by resort to the courts in the event such negotiations fail and, by the same token, without prejudice to the right to assert any defense which might have been available absent such negotiations. Indeed, such negotiations are commonplace both before and after litigation is commenced. So long as the parties deal with each other at arm's length, and no undue advantage is taken by one of the other, settlement negotiations do not operate to suspend the running of applicable statutes of limitations or modify the rules of procedure affecting jurisdiction. 6 Fla.Jur., Compromise and Settlement, § 4, and cases cited.
A careful review of the pleadings and proofs in the instant case fails to reveal that any personal representative, agent, attorney or employee of the estate of Charles Colley Kemp, deceased, by design or inadvertence took any action the effect of which was to lull the appellant into a false sense of security or otherwise induce him to ignore the clear provisions of the statute. Appellant has failed to demonstrate that the lower court abused sound judicial discretion in denying the petition for an extension of time in which to bring suit upon the subject claim.
Accordingly, the order appealed must be and it is
Affirmed.
WIGGINTON, J., concurs.
RAWLS, C.J., dissents.
RAWLS, Chief Judge (dissenting.)
Other facts which I find to be of significance are reflected by the correspondence between Becton, Branch Manager of Crawford & Company, the insurance company's adjuster, for Insurance Company of North America, Kemp's liability carrier. On March 3, 1964, Becton advised the insurance company that: "Basically, the case appears to be almost impossible to defend," and that in accordance with its instructions he had made to Mr. Lissner, [the attorney for Herring's estate] "* * * a flat offer of $19,000.00 for all claims." In a letter dated March 12, 1964, Becton advised the insurance company: "As this would come under Florida law, * * * [w]e suggested to Mr. Lissner that we back off completely and withdraw all offers until such time as we could reconsider the matter. Mr. Lissner agreed to this. * * * He told us that he thought a settlement could be reached within the range of the authorization given." On April 23, 1964, Becton wrote the insurance company that he had talked to Mr. Lissner and that "He [Mr. Lissner] has asked that we make him an offer of settlement if we desire to do so and, if not, to let him know, so that he can go ahead and file suit." In a letter dated May 11, 1964, Becton again wrote the insurer in which he stated: "Upon receipt of your letter of April 29, 1964, we contacted Mr. Jack Lissner. He told us that he would prepare the requested information. We talked with him at some length about this matter. Briefly, he contends that this man's earnings on investments were a legitimate part of this loss. * * * It was this man's experience in the real estate business, and his ability to keep money working, that enabled them to enjoy this income from investments. In other words, you point out that Mr. Herring's earnings consisted mostly of income from investments. Mr. Lissner *763 contends that, in order to derive income from investments, you must constantly reinvest the interest received. Mr. Herring's investments and reinvestments were something that only he could do. * * * As we have stated, we became involved in a considerable discussion of this with Mr. Lissner, however, he finally agreed to furnish us with the information requested. He has not done so, and we have called his office. We found that he is in court. We will continue. * * *" And then we note a marked difference in the tone of the correspondence between the insurer and its adjuster. The insurer on May 13th instructed Becton as follows: "I would suggest that you discontinue your efforts to secure further information from Attorney Lissner. Under the Florida Statutes, Mr. Lissner had only two months from the date he filed claim against the Kemp estate to institute suit. If I understand the statutes correctly, this suit was forever barred after May 10, 1964." Becton replied on May 14th to the insurance company as follows: "We have received your letter of May 13, 1964. As Mr. Lissner has been receiving advice from a Florida attorney, and is very conscious of the fact that the Florida laws differ radically from the Georgia laws, it would be surprising if he fails to comply. However, our luck may be good. We will comply with your instructions. We presume that you will let us know if the matter can be closed." (Emphasis supplied.) Becton then wrote the insurance company on May 25th: "There have been no further developments on this cause since our letter to you dated May 14, 1964," and to the same effect on June 8th. And then on June 12th, Becton wrote the insurer that in accordance with its instructions, he was closing the file, submitting a bill for services and gratuitously added: "You are correct in that this has been very enlightening to us. However, we are sure that it has been much more enlightening to Mr. Lissner."
In addition to the above correspondence, the unrebutted testimony of Mr. Lissner was that on March 21 or 22 Mrs. Miller, representing the Kemp Estate, advised him after filing the objection to the Herring claim that "* * * she would ask the insurance company to settle this estate, to settle the claim on behalf of her estate, which she represented, the Kemp Estate, so that it might be released from any further liability to the Herring Estate", is enlightening to the writer. Lissner also testified that Mrs. Miller informed him she was a representative of the insurance company. Negotiations for settlement began again. Lissner then sent the Herring income tax returns to Becton who in April informed him that the company reviewed the returns and took the position that the part of Herring's income was interest and should not be considered as earnings in determining the basis for the settlement. Lissner took the position that the interest was earnings from a type of investments that only Herring was capable of managing and so the interest should be considered as earnings. Becton promised to relay his position to the insurance company for its decision. During the next two or three weeks Lissner called Becton on two or three occasions, talked to him about the matter, but Becton informed him that he had not heard and was waiting for the company's decision. Lissner stated that the documents (including income tax returns) he had turned over to Becton at his request were never returned to him personally and though Becton told him that they had been returned, no one in his office had been able to find them. Lissner denied that a $45,000 offer of settlement was ever made to him, but admitted that he had probably threatened to file suit a dozen times in talking to Charlie Becton.
Becton testified that about April 15th he was authorized to make an offer of $45,000, that sometime in April he discussed with Lissner their differences as to the interest being considered part of Herring's earnings, but the conversation referred to in his April 23rd letter related to an offer on the part of the Kemp Estate to withdraw its claim against the Herring Estate if the Herring Estate would withdraw its claim against the *764 Kemp Estate. However, it was not until May 11, 1964 that Becton advised the insurer as to Lissner's contentions about the income from investments. The insurer answered this letter advising Becton that suit was barred after May 10, 1964.
As set forth in the majority opinion, that portion of Section 733.18(2), Florida Statutes, F.S.A., which requires claimant to institute an appropriate suit within two months after being served with objections to the claim, is in effect a statutory rule of judicial proceeding. It is neither a non-claim statute nor a statute of limitations. Since we are here concerned with a rule of judicial procedure, I think it is appropriate to review the purpose of such rules, and in doing so, I refer the reader to the opinion of this court in Davis v. Evans,[1] wherein Sturgis, J., stated:
"It is uniformly held that the highest purpose for which courts are established is to administer justice under the law, that the rules of practice are for the purpose of aiding speedy determination of causes, and that where strict enforcement of the letter of rules of practice tends to prevent or jeopardize the administration of justice, they should yield to the higher purpose." (Emphasis supplied.)
The Supreme Court in the case of In re Jeffries' Estate,[2] clearly pointed out said purpose as:
"It is the purpose of the Probate Act of 1933 to expedite the settlement of the estate of decedents; but there is no purpose in the state to unreasonably curtail the remedial rights of creditors of such estates to present and to enforce their claims by due and appropriate judicial procedure.
"The statute should be interpreted and applied so as to facilitate the settlement of estates in the interest of the public welfare, without unreasonably or unduly restricting the rights of creditors of such estates who in good faith and without laches endeavor to comply with the substantial and essential requirements of the statute in order that right and justice `shall be administered' by due course of law as commanded by section 4 of the Declaration of Rights of the Florida constitution."
It is apparent that the primary objective which we must seek in construing the subject rule is to "administer justice under the law" within the framework of aiding speedy determination of the cause without unreasonably or unduly restricting the rights of creditors of such estate.
The purpose of the Probate Act and the Rules of Procedure, when applied to the facts recited herein and in the majority opinion, leads me to conclude that a clear picture of estoppel against the insurance company is presented. The insurance company, through its adjuster, assumed all responsibility including that imposed upon the executrix for the handling of this claim. Such action is usually the case in the negotiation for the settlement of negligence cases in this day and time. The insurance company, after "lulling" claimant into a sense of security, seeks to hide behind the skirts of the executor and plead; that since the executor has done nothing that will constitute an estoppel against him or the estate which he is representing and since it stands behind the executor, it cannot be reached. I do not agree with such premise. Sturgis, J., in holding that the principal of estoppel was available to the appellant in Davis v. Evans,[3] stated:
"This rule [estoppel] should apply with no less force to inaction the result of which is to permit affirmative action by another  in this case the attorneys *765 of record for decedent  as a consequence of which the party having the claim is lulled into a false sense of security as to a matter of the character here involved." (Emphasis supplied.)
I do not hesitate to place the instant insurance company in the same position as "the attorneys of record for decedent" in Davis. The facts speak for themselves. This insurance company dangled the plum of settlement in Lissner's face until the plum became an albatross around his neck.
Under the glaring injustice perpetrated upon appellant estate as revealed by these facts, I would hold that the executor of the Kemp Estate is estopped from challenging the suit upon the Herring claim, and in the event judgment is procured, that execution upon such judgment be limited to a recovery from the insurance company under the mentioned liability policy.
I, therefore, dissent.
NOTES
[1] Davis v. Evans, 132 So.2d 476, 482 (Fla. App.1st, 1961).
[2] In re Jeffries Estate, 136 Fla. 410, 181 So. 833, 837 (1938).
[3] Davis v. Evans, supra.