250 So.2d 259 (1971)
Marvin F. THOMPSON, Petitioner,
v.
COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, a Corporation, Respondent.
No. 39912.
Supreme Court of Florida.
July 12, 1971.
Rehearing Denied August 3, 1971.
*260 David R. Lewis, of Blalock, Holbrook, Lewis, Paul & Bennett, Jacksonville, for petitioner.
Bruce S. Bullock, of Marks, Gray, Conroy & Gibbs, Jacksonville, for respondent.
McCAIN, Justice.
By petition for writ of certiorari, we have for review a decision of the District Court of Appeal, First District, rendered on June 30, 1970, reported at 237 So.2d 247, affirming the dismissal of petitioner's complaint for failure to state a cause of action. We have jurisdiction by virtue of conflict with our decision in Beta Eta House Corporation, Inc. of Tallahassee v. Gregory, 237 So.2d 163 (Fla. 1970).
Petitioner sued Deloris Haynes (not a party to this action), for injuries received in an automobile accident and obtained a judgment against Mrs. Haynes in the amount of $89,500. Mrs. Haynes' insurer, respondent herein, paid petitioner $25,000 (the policy limit of Mrs. Haynes' policy with respondent) toward satisfaction of the judgment.
Subsequently, petitioner brought suit against respondent directly for the $65,000 balance of the judgment, alleging that respondent was guilty of bad faith in failing to settle the claim originally within the limits of the policy. The following particulars were alleged: that plaintiff's claim was clearly meritorious, as shown by the fact that a directed verdict was entered in plaintiff's favor during the trial; that plaintiff's damages far exceeded the policy limits; that insurer had failed to properly investigate the extent of plaintiff's damages; that the insurer rejected the advice of its own attorney and/or agents to settle; that the insurer failed to inform the insured of compromise offers; that the insurer failed to inform the insured of the possibilities or probabilities of an excess verdict; that the insurer was gambling with a far greater portion of the insured's financial risk than its own; that the insurer failed to inform its own attorney of the limits of the policy so as to permit him to properly recommend a proper settlement or properly advise the insured of her own financial risk; and that the insurer failed to follow or seek legal advice in the settlement of the lawsuit from Florida attorneys experienced in the practice of law in the Duval County Courts.
There was no assignment by the insured to petitioner of any possible claims against the insurer.
On these facts, the trial court dismissed petitioner's complaint with prejudice for failure to state a cause of action. The First District Court affirmed, expressing the opinion that the third-party beneficiary theory enunciated by this Court in Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969) was of no comfort to petitioner. The court said, inter alia:
"The Supreme Court of Florida, in affirming this court's decision in Bussey, expanded the rationale into `quasi-third party beneficiary contract,' but a very careful study of the Bussey decision convinces us there was no effort to enlarge upon the limits of liability of the insurance company beyond that stated in the policy. The basic and fundamental holding of the court in Bussey, regardless of theory upon which founded, was that an insurance carrier could be made a direct party defendant and bound to the plaintiff for the maximum limits of the policy, if recovery was granted."
We disagree and reverse.
It is established in Florida that an insured has the right to sue and recover damages against his own insurer for an excess judgment on the basis of fraud or bad faith in the conduct of the insured's defense by the insurer. American Fire and *261 Casualty Company v. Davis, 146 So.2d 615 (Fla.App. 1st, 1962).
It is also established in this state that a third party beneficiary who is not a formal party to a contract may sue for damages sustained as the result of the acts of one of the parties to the contract. See Weimar v. Yacht Club Point Estate, Inc., 223 So.2d 100 (Fla.App. 4th, 1969); Morse v. Hendry Corporation, 200 So.2d 816 (Fla. App.2d, 1967); DiCamillo v. Westinghouse Electric Corporation, 122 So.2d 499 (Fla. App. 2d, 1960) (materialman as third party beneficiary); Flintkote Company v. Brewer Co. of Florida, 221 So.2d 784 (Fla. App. 3rd, 1969) (materialman); Mugge v. Tampa Waterworks Co., 52 Fla. 371, 42 So. 81 (1906); Woodbury v. Tampa Waterworks Co., 57 Fla. 243, 249, 49 So. 556 (1909); Auto Mut. Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938).
The last-named of these cases, Auto Mut. Indemnity v. Shaw, is particularly relevant to the case sub judice. In that case plaintiff-judgment creditor brought suit against tortfeasor's insurer to recover an excess judgment against tortfeasor. Although this Court held the evidence insufficient to sustain the verdict against the insurer, we also said that under the particular wording of the insurance policy,[1] the judgment creditor had a right of action against the insurer for the full amount of his judgment including any excess over the policy limits, where the insurer indulged in conduct amounting to fraud or bad faith. Our language in that case was significant:
"The authorities are in harmony with the rule that one for whose benefit a contract is made, although not a party to the agreement and not furnishing the consideration therefor, may maintain an action against the promisor. In other words, a third person can enforce a contract entered into between others for his benefit. See 81 A.L.R. 1279
* * * * * *
"Upon the principle of law well established and long recognized, where a person engages another, for a valuable consideration, to do some act for a benefit of a third, the latter who would enjoy the benefit of the act may maintain an action for the breach of such engagement, the law operates upon the acts of the parties, creates a duty, establishes a privity and implies the promise and obligation. We therefore hold that the plaintiff to this suit is within the benefits of the policy sued upon and has a right to maintain this suit."[2]
Related to the third-party beneficiary concept is the rule that every action may be prosecuted in the name of the real party in interest. See Rule 1.210(a), RCP, 30 F.S.A., formerly Section 4201, Comp. Gen.Laws 1927 and Fla. Stat. § 45.01. This rule has been commented on extensively in Florida case law. In the early case of American Surety Co. of New York v. *262 Smith, 100 Fla. 1012, 130 So. 440 (1930), we find the following language:
"Even independently of statutory influence, the rule now prevails in many jurisdictions that one for whose direct benefit a contract was made, and who is a primary party in interest, may enforce the same * * * This view now obtains in perhaps the majority of jurisdictions, in some instances through statutory influence and in some instances without it * * *
"In this state the doctrine is affected by statute. Section 4201, Comp.Gen.Laws 1927, provides, amongst other things, that `any civil action at law may be maintained in the name of the real party in interest. * * * By amendment the nominal plaintiff may be stricken out and the case may proceed in the name of the use plaintiff.'
"It has heretofore been held that the purpose of this statute is `to relax the strict rules of the common law, so as to enable those directly interested in, but not parties to, a contract, to maintain an action for its breach; and the statute should be so applied as to accomplish its salutary purpose.' Woodbury v. Tampa Water Works Co., 57 Fla. 249, 49 So. 556, 21 L.R.A.(N.S.) 1034; First National Bank of St. Augustine v. Perkins, 81 Fla. 341, 87 So. 912 * * * we * * * hold that, when it is manifest from the nature or terms of a contract that the formal parties thereto intended to treat a third party as a person primarily entitled to the benefit of its provisions and therefore a party directly, and not merely consequently, interested in its enforcement, such beneficiary may maintain an action in his own name upon the contract, even though the contract be under seal."
This language was followed and further explained in Marianna Lime Products Co. v. McKay, 109 Fla. 275, 147 So. 264 (1933), and Bruce Const. Corporation v. Federal Realty Corp., 104 Fla. 93, 139 So. 209 (1932) and has apparently evolved into or merged with the third-party beneficiary doctrine in DiCamillo v. Westinghouse Electric Corporation, supra, and Flintkote Co. v. Brewer Co. of Florida, supra. At any rate, the rule in Florida now is that the third party beneficiary of a contract is the real party in interest and may prosecute an action on it in his own name as the real party in interest. First National Bank of St. Augustine v. Perkins, 81 Fla. 341, 87 So. 912 (1921).
Essential to the right of a third party beneficiary of a contract to maintain an action for its breach is the clear intent and purpose of the contract to directly and substantially benefit the third party. See Woodbury v. Tampa Waterworks Co., supra; First National Bank of St. Augustine v. Perkins, supra; and East Coast Stores, Inc. v. Cuthbert, 101 Fla. 25, 133 So. 863 (1931).[3]
On this point, the reasoning of Wigginton, J., concurring specially in Canal Insurance Company of Greenville, S.C. v. Sturgis, supra, is especially cogent:
"There is much force to the contention made by appellee that irrespective of its provisions, every automobile liability insurance policy should be construed as a third party beneficiary contract entitling a judgment creditor to recover in a direct action against the insured for the excess of his judgment over policy limits in those cases where the insurer is guilty of negligence or bad faith in handling the claim. This argument is predicated on the public policy of Florida as proclaimed in the Florida Financial *263 Responsibility Law. This Act requires as a condition to the privilege of operating a motor vehicle on the streets and highways of this state that the owner possess the financial ability to respond for any damages caused by the operation of his vehicle. The Act provides that automobile liability insurance shall constitute adequate proof of the required financial responsibility. The liability insurance furnished in accordance with the mandate of this law is primarily for the protection of and benefit to third parties. Under appellee's theory, liability insurance policies should therefore be construed as third party beneficiary contracts subject to enforcement by a judgment creditor in a direct action against the insurer under the rule announced in Shaw."
At the time Canal Insurance Company was decided Judge Wigginton's theory was revolutionary because neither the courts nor the Legislature in Florida had ever construed liability insurance policies as third-party beneficiary contracts. But in Shingleton v. Bussey, supra, this theoretical gap was bridged. We said in Shingleton:
"* * * the third party beneficiary doctrine encompasses, substantially speaking, a cause of action against an insurer in favor of members of the public injured through the acts of an insured. Support for this view is buttressed by the State Financial Responsibility Law, Ch. 324, Florida Statutes, F.S.A.
"It cannot be disputed that securance of liability insurance coverage protection for the operation of a motor vehicle, regardless of whether the policy is secured to meet the requirements of Ch. 324, F.S., is an act undertaken by the insured with the intent of providing a ready means of discharging his obligations that may accrue to a member or members of the public as a result of his negligent operation of a motor vehicle on the public streets and highways of this state.
"Viewed in this light, we think there exists sufficient reason to raise by operation of law the intent to benefit injured third parties and thus to render motor vehicle liability insurance amenable to the third party beneficiary doctrine."
Moreover, in Beta Eta House Corp. of Tallahassee, Inc., v. Gregory, supra, we also said:
"In the event the carrier denies coverage, this issue may be determined by a separate trial before, as well as after, the trial on the merits.
* * * * * *
"The separate trial is not necessarily limited to the issue of coverage. The question of whether or not the carrier exercised good faith in the settlement of a claim against the insured could also be determined by a separate trial after the determination of the case on the merits."
Thus, it is apparent that our holdings in Shingleton and Beta Eta have removed the only obstacle to adoption of the theory and reasoning expressed by Wigginton, J., in Canal Insurance, supra.
Moreover, such a result accords with the settled public policy of this state to encourage and favor compromise and settlement of controversies when such settlement is entered into fairly and in good faith by competent parties, and is not procured by fraud or overreaching. See Florida East Coast R. Co. v. Thompson, 93 Fla. 30, 111 So. 525 (1927); Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893 (1934); City of Coral Gables v. State, 128 Fla. 874, 176 So. 40 (1937); Harper v. Strong, 135 Fla. 10, 184 So. 848 (1938); Wade v. Wade, 63 So.2d 184 (Fla. 1953); National Surety Co. v. Willys-Overland, Inc., 103 Fla. 738, 138 So. 24 (1931); Russell v. Shelby Mutual Insurance Company, 128 So.2d 161 (Fla.App. 3rd, 1961); In Re Estate of Kemp, 177 So.2d 757 *264 (Fla.App. 1st, 1965); Coe v. Diener, 159 So.2d 269 (Fla.App. 2d, 1964).
Accordingly, we adopt the language set out above from the concurring opinion of Wigginton, J., in Canal Insurance Company of Greenville, S.C. v. Sturgis, supra, and hold that a judgment creditor may maintain suit directly against tortfeasor's liability insurer for recovery of the judgment in excess of the policy limits, based upon the alleged fraud or bad faith of the insurer in the conduct or handling of the suit. Such allegations have been pleaded in the case under consideration.
Certiorari is therefore granted, the decision of the District Court of Appeal, First District, is quashed and the cause remanded to the District Court with directions to order the Duval County Circuit Court to reinstate plaintiff's complaint.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS, BOYD and DEKLE, JJ., concur.
NOTES
[1] The provision in question reads as follows:

"Insolvency or Bankruptcy of Assured. The insolvency or bankruptcy of Assured shall not release the Company from any payment otherwise due hereunder, and if, because of such insolvency or bankruptcy, an execution on a judgment against assured is returned unsatisfied, the judgment creditor shall have a right of action against the Company to recover the amount of said judgment to the same extent that Assured would have had if he paid the judgment. * * *"
[2] The result reached in Shaw apparently precipitated changes in policy provisions by insurers to eliminate the language resulting in liability. The new language proved successful in limiting the liability of the insurer to the stated limits of liability and, additionally, terminated the right of the plaintiff to bring a direct action against the insurance company for any excess verdict. See Canal Insurance Co. of Greenville, S.C. v. Sturgis, 114 So.2d 469 (Fla.App. 1st, 1959), affirmed in Sturgis v. Canal Insurance Company of Greenville, S.C., 122 So.2d 313 (Fla. 1960).
[3] Of course it is possible for a contract to be intended for the benefit of both the formal parties and the third party beneficiary. Where this is the case, as we think it is with regard to automobile liability insurance contracts, both the formal parties and the third party beneficiary or beneficiaries may maintain an action for breach. American Surety Co. of New York v. Smith, supra.