209 N.J. Super. 163 (1986)
507 A.2d 247
PEGGY ANNE MURRAY, PLAINTIFF-APPELLANT,
v.
ALLSTATE INSURANCE COMPANY, JOHN NAUGHTON, JOHN DOE I AND JOHN DOE II, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1986.
Decided March 25, 1986.
*165 Before Judges KING, SIMPSON and SCALERA.
Thomas J. DiChiara argued the cause for appellant (Drazin and Warshaw, attorneys, Thomas J. DiChiara on the brief).
John S. Voynick, Jr., argued the cause for respondents Allstate and Naughton (Carpenter, Bennett and Morrissey, attorneys, John E. Keale, of counsel, John S. Voynick on the brief).
The opinion of the court was delivered by SCALERA, J.S.C. (temporarily assigned).
In this case we are asked to hold that a personal injury claimant may sue a liability carrier for "bad faith" without an assignment of that claim from the carrier's insured. Plaintiff appeals from the Law Division judge's order granting summary judgment and dismissing the complaint. We reaffirm the principle expressed by us in Biasi v. Allstate Ins. Co. 104 N.J. Super. 155 (App.Div. 1969), certif. den. 53 N.J. 511 (1969), that the personal injury claimant may not sue the carrier to recover the excess verdict beyond the coverage without an assignment of the claim from the insured.
On January 1, 1982 plaintiff, Peggy Anne Murray, was involved in a motor vehicle accident when her car collided with a motor vehicle owned by William B. Olsen and operated by Thomas W. Olsen. As a result, plaintiff instituted a suit for personal injuries. At the time of the accident defendant Allstate had in effect a policy of insurance issued to William B. Olsen which covered the operation of the vehicle by Thomas W. Olsen. In accordance with the terms of the policy, Allstate tendered a defense to both Olsens.
*166 On June 14, 1984 a jury trial resulted in a verdict in favor of plaintiff and against Thomas W. Olsen only in the amount of $75,000. Allstate undertook to prosecute an appeal of that result on behalf of its insured. This court heard numerous motions addressed to that appeal of the tort action and ultimately entered an order which provided that,
A stay of the judgment pending appeal is granted conditioned upon appellant's posting a supersedeas bond in the sum of $103,880. Plaintiff shall not be entitled to levy, execute or otherwise pursue the bond for any sums over and above the contractual obligation of the Allstate Insurance Company under appellant's automobile liability insurance policy unless and until Allstate's liability for an excess judgment is established in a "bad faith" suit.
Eventually defendant did file the bond required and the appeal proceeded. Ultimately this court affirmed the jury's verdict for $75,000.
During the pendency of the appeal of the tort action, plaintiff filed the instant suit against Allstate, its adjuster, Naughton, and several unidentified employees of Allstate identified as John Does. In that complaint, plaintiff essentially asserted that Allstate and its employees had "failed to negotiate [a settlement] in good faith on behalf of Thomas W. Olsen" thus entitling plaintiff to a judgment for the entire amount of the jury's verdict in the tort action plus "costs of suit and attorneys fees."[1]
Defendants brought a motion for summary judgment contending that they were entitled to a dismissal because plaintiff had not secured from Allstate's insured, Thomas W. Olsen, a written assignment to prosecute the claim. Plaintiff opposed the motion asserting a right to bring the action independent of any assignment and also submitted an affidavit by Thomas W. Olsen's personal attorney in which he said that his client had *167 indicated a willingness to provide such an assignment. However, Olsen has since left the State and cannot be located. No assignment has been obtained. Following oral argument, the Law Division judge granted defendant's motion for summary judgment, relying upon this court's decision in Biasi v. Allstate Ins. Co., 104 N.J. Super. 155 (App.Div. 1969), certif. den. 53 N.J. 511 (1969).
Plaintiff here asserts that the trial court erred because,

 Point I . . . [T]he court erred when it refused
 to abide the appellate division's prior
 ruling on this matter in holding that the
 bad faith suit could be instituted.
 Point II The lower court erred when it held that
 plaintiff could not proceed in this
 matter unless it had a written assignment
 from the insured.
 Point III. [T]he court erred when it dismissed the
 plaintiff's complaint for failure to
 state a claim upon which relief can be
 granted.

I
Plaintiff contends that the entry of the interlocutory order of this court entered in the appeal of the tort action conclusively established her right to "file a bad faith suit against the defendant, Allstate, even though an assignment of rights had not been made." We disagree.
Aside from the fact that the language of the order simply does not support her conclusion, the law is not supportive of her position. There was no final order or judgment entered upon which this court acted in ruling on the procedural requirements of that appeal. Credit Bureau Collection Agency v. Lind, 71 N.J. Super. 326, 328 (App.Div. 1961). The merits of plaintiff's right to prosecute the bad faith suit simply was not part of that record and was not properly before this court for decision at that time. Matter of Kovalsky, 195 N.J. Super. 91, 99 (App.Div. 1984).

II
Plaintiff further asserts that her suit against defendants was dismissed improperly because she has a right to bring such a *168 suit as a third-party beneficiary, that the facts in Biasi are distinguishable and thus not apposite or controlling and further, that insofar as Biasi may be read to require a written assignment as a condition precedent, it does not correctly state the law in this area. (We note that plaintiff's complaint herein does not contain any allegation of a right as a third-party beneficiary).
In Biasi v. Allstate Ins. Co., 104 N.J. Super. at 156-157, plaintiff won a judgment in an automobile accident case against Allstate's insured which exceeded the policy limits. Since the insured was unable to satisfy the amount of the judgment, plaintiff's attorneys suggested that the insured sue Allstate and also sent the insured an assignment of rights which would permit plaintiff to do so. The insured refused and plaintiff instituted suit against the insurance company. Allstate moved for summary judgment and offered an affidavit by its insured specifically indicating her complete satisfaction with Allstate's handling of her case and asserting, further, that she did not desire to sue Allstate nor did she want plaintiff to do so. In affirming the trial court's grant of that summary judgment the court observed,
Plaintiff contends that a party injured in an automobile accident who recovers a judgment against another motorist, who caused the injury, for a sum in excess of the liability policy limits of defendant motorist's insurance coverage can, without holding an assignment from the insured, bring an action against the insurance company for breach of the latter's obligation to act in good faith in reference to negotiation of settlement of the claim prior to judgment. Plaintiff bottoms its contention upon the argument that plaintiff has a common law right to succeed to any claim arising out of the policy which the assured could prosecute against the insurance company.
* * * * * * * *
The right of the assured to recover against the insurer for its failure to exercise good faith in settling a claim within the limits of a liability policy, as was adjudicated in Bowers v. Camden Fire Ins. Ass'n, 51 N.J. 62 (1968), is predicated upon the potential damage to the assured in being subjected to a judgment in excess of her policy limits and the consequent subjection of her assets to the satisfaction of such judgment. The damage is peculiarly to the assured by reason of breach of an implied condition of the policy contract. The injured third party is a stranger in that sense. Moreover, public policy does not *169 mandate that the injured party in the accident should be deemed the intended beneficiary of the company's contractual duty to its policyholder to act in good faith regarding settlement.
Nor does N.J.S.A. 17:28-2 give the injured party such a right. It merely provides that the bankruptcy or insolvency of the assured against whom an injured party has recovered a judgment shall not release the insurance carrier and, in such an event, the injured party may file an action directly against the carrier under the terms of the policy for the amount of the judgment but "not exceeding the amount of the policy." This statute is not applicable to the present situation.
Under the circumstances here present we conclude that plaintiff does not have a legal cause of action against Allstate or the status to maintain the present suit. Therefore we find that the trial court properly entered summary judgment against her. See Duncan v. Lumbermen's Mutual Casualty Co., 91 N.H. 349, 23 A.2d 325 (Sup.Ct. 1941); Wessing v. American Indemnity Co. of Galveston, 127 F. Supp. 775 (D.C.W.D.Mo. 1955); Chittick v. State Farm Mutual Automobile Ins. Co., 170 F. Supp. 276 (D.C.Del. 1958); Murray v. Mossman, 56 Wash.2d 909, 355 P.2d 985 (Sup.Ct. 1960); Ammerman v. Farmers Insurance Exchange, 19 Utah 2d 261, 430 P.2d 576 (Sup.Ct. 1967). See also, Keeton, "Liability Insurance and Responsibility For Settlement," 67 Harv.L. Rev. 1136, 1176 (1954).

Atlantic City v. American Casualty Insurance Co., 254 F. Supp. 396 (D.C.N.J. 1966), relied upon by plaintiff is inapposite. In that case plaintiff did possess a partial assignment from the assured (Atlantic City) of its claim against the insurance carrier for the carrier's unreasonable refusal to settle. Thus, any discussion therein by the court as to the rights of the injured party to sue the insurance company without an assignment was dictum.
Unlike Biasi, here Olsen has not affirmatively indicated his approval of the manner in which Allstate had handled plaintiff's claim against him. (Indeed, plaintiff argues that there is evidence to indicate his express desire to do otherwise. But the attorney's affidavit is not competent evidence to support this conclusion. R. 1:6-6). However, the Biasi court clearly held that absent the insured's express consent, an injured judgment creditor may not maintain an excess suit against an insurance carrier under any of the theories advanced by plaintiff here. Whether the rationale be that of third-party beneficiary, a right accorded by statute, some judicially-fashioned common-law remedy or otherwise, a sine qua non is that the insured be dissatisfied and expressly and affirmatively take steps to prosecute such a claim or, by assignment, authorize another person to do so. Bourget v. Government Employees *170 Ins. Co., 456 F.2d 282 (2nd Cir.1972); Annotation, "Right of Injured Person Recovering Excess Judgment Against Insured to Maintain Action Against Liability Insurer For Wrongful Failure to Settle Claim," 63 A.L.R.3d 677 (1975).
Plaintiff directs our attention to the case of Thompson v. Commercial Union Ins. Co. of New York, 250 So.2d 259 (Fla. 1971), in which the Supreme Court of Florida stands alone in upholding plaintiff's position here. We simply do not agree that its rationale is more persuasive than that elucidated by this court in Biasi. The extent of contractual duties are contained within the terms of the insurance policy including the monetary limits. Any right of action for recovery in excess of those limits, caused by a breach of that contract, inures only to the benefit of the primary parties to the contract and not to any stranger to that contract. Bourget, supra; see Turgeon v. Shelby Mut. Plate Glass & Cas. Co., 112 F. Supp. 355 (D.Conn. 1953). To hold otherwise would be to expose an insurer to suit in every instance where the judgment ultimately exceeds the policy limits notwithstanding the satisfaction of the insured that the insurer has fully performed its contractual duties. Cf. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974). Such a rule would further unfairly restrict a carrier's ability to negotiate a settlement with a potential plaintiff without fear of reprisal through such an excess suit.
While it may be argued that financially irresponsible insureds will frustrate the ability of an injured party to be fully compensated when the judgment exceeds policy limits by failing to furnish the necessary authority for institution of suit, we think that such an argument is speculative at best. For example, in Biasi, the execution on the judgment was returned unsatisfied, indicating that the insured was not possessed of sufficient assets to pay the excess judgment. Yet, there the insured, when faced with an offer to have the injured party pursue her carrier (presumably without expense to her) expressly indicated her satisfaction with the carrier's handling of the complaint and *171 refused to sign the assignment. In this case, we should expect no less than a like informed and express determination by Olsen.
Thus we reaffirm the rationale expressed in Biasi by this court and affirm the dismissal of plaintiff's complaint.
SIMPSON, J.A.D., dissenting.
I respectfully dissent from Part II of the majority's opinion in this case, relying principally as it does upon Biasi v. Allstate Ins. Co., 104 N.J. Super. 155 (App.Div. 1969), certif. den. 53 N.J. 511 (1969), since that case is distinguishable and in my view the circumstances here present require reversal of the summary judgment dismissing plaintiff's complaint. A $75,000 judgment (plus prejudgment interest) upon a jury verdict has already been affirmed on appeal, with the unreported opinion noting that:
Olsen admitted that the accident was his fault, and said in the course of direct examination by his own attorney that he received a summons for and pled guilty to careless driving.
As to the contention that the verdict was excessive, the court stated:
Nor do we consider the quantum of the verdict as shocking the judicial conscience and warranting appellate interference. Baxter v. Fairmont Food Co., 74 N.J. 588, 598-599 (1977).
Olsen's applicable policy limit was only $25,000. On the motion below, Allstate's counsel told the judge that $12,500 would have settled the case, although at oral argument before us he said the amount was $10,000. Since the verdict was not excessive, Allstate could have settled for 40 to 50% of the policy[1] and the verdict was six to seven and one half times such settlement figures.[2] The verdict was three times the $25,000 policy limit and it is clear that the extent of plaintiff's injuries and their causal relationship to this accident were the principal *172 issues in the "hotly contested trial."[3] Whether there was a good faith effort by Allstate to settle on behalf of its insured, Olsen, is a fact question that should be decided at a plenary trial, Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974)  provided that plaintiff has standing to bring this action against Allstate.
In Biasi, the defendant insured refused to assign to the plaintiff her rights to recover from Allstate "damages for the judgment against [her]" in excess of her policy limits and said "I am completely satisfied with the way Allstate handled my case and I do not wish to sue Allstate nor do I want the Biasis to do so," 104 N.J. Super. at 157-158. The situation in the present case is quite different. As the majority has pointed out, Olsen's personal attorney said his client had indicated a willingness to provide such an assignment, but he has absconded and cannot be located. While it is true that R. 1:6-6 and Evid.R. 63 would preclude such a statement as hearsay evidence, it is also true that Olsen's previous statement would be admissible at trial if he is a witness  pursuant to Evid.R. 63(1). In any event, if Olsen's consent or assignment is crucial, the determination should not be made on a motion for summary judgment without at least an affidavit by the insured. In my view, however, the majority is incorrect in concluding that an assignment is a sine qua non to permit an injured party, such as plaintiff, to maintain an excess suit against the carrier. On the contrary, the action should be permitted unless the insured affirmatively objects as in Biasi.
The annotation cited by the majority, 63 A.L.R.3d 677 (1975) indicates that the cases around the country are split as to whether an injured party can recover in excess of the policy limits in the absence of an assignment from the insured. The rationale precluding such an action is usually lack of privity or *173 rejection of the injured party's standing as a third party beneficiary of the insurance contract. In the light of present day automobile transportation conditions, and current insurance regulation, coverage, practice and procedures, application of such traditional common-law bars to an injured party's bad faith claim against an insured's carrier is no longer warranted. Cf. Rosenblum v. Adler, 93 N.J. 324 (1983); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960). The cited portion of the opinion in Biasi also includes the assertion that:
Moreover, public policy does not mandate that the injured party in the accident should be the intended beneficiary of the company's contractual duty to its policyholder to act in good faith regarding settlement. [104 N.J. Super. at 159-160].
More persuasive to me is the reasoning in Thompson v. Commercial Union Ins. Co. of New York, 250 So.2d 259 (Fla. 1971), that mandatory automobile liability insurance is primarily for the protection of and benefit to third parties, and the right of an injured party to sue on a judgment in excess of the insured's policy limit on a bad faith claim (without an assignment by the insured) accords with public policy favoring compromise and settlement of controversies. New Jersey also views insurance as an instrument of a social policy that the victims of negligence be fully compensated. Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94 (1968); cf. Breen v. Peck, 28 N.J. 351, 357 (1958); Deblon v. Beaton, 103 N.J. Super. 345, 351 (Law Div. 1968). Such a result further accords with an economic view of law deeming it essential that a defendant be made to pay damages and that they be equal to a plaintiff's loss. Posner, Economic Analysis of Law, (2d Ed. 1977) § 6.12 at 143.
Furthermore, my colleagues' concern about restricting a carrier's ability to negotiate "without fear of reprisal through such an excess suit" is unrealistic. Liability insurance policies invariably contain clauses requiring an insured's cooperation in defense of a case and giving the carrier full control of the settlement of claims against the insured. The only fear a *174 carrier need have is that of an excess suit where it has not negotiated in good faith. In that respect, it should be irrelevant as to whether the injured party has an excess judgment assignment or not; and in any event, an excess claim should be actionable in the absence of an affirmative objection by the insured.
I would reverse the summary judgment and reinstate plaintiff's complaint.
NOTES
[1] The counts against defendant Naughton were couched in terms of his individual failure to negotiate a settlement in good faith as the company adjuster assigned and, in terms of his failure to do so, because he "had a personal vendetta" against plaintiff's law firm. However, the dismissal of these counts has not been separately treated or argued, and we assume that such a cause of action has been abandoned. R. 2:6-2.
[1] 40% X $25,000 = $10,000 and 50% X $25,000 = $12,500.
[2] 6 X $12,500 = $75,000 and 7 1/2 X $10,000 = $75,000.
[3] Description of the trial in the unreported Appellate Division opinion affirming the judgment in Murray v. Olsen.