745 So.2d 492 (1999)
Clyde Riley KILPATRICK, Appellant,
v.
OGDEN ENTERTAINMENT, INC., d/b/a Ogden Presents, Appellee.
No. 98-2655.
District Court of Appeal of Florida, First District.
November 22, 1999.
Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola, for Appellant.
Robert C. Palmer, III, Pensacola, for Appellee.
PER CURIAM.
Appellant, Clyde Riley Kilpatrick, appeals an order dismissing his complaint *493 against Ogden Entertainment Inc. (Ogden). We affirm.
Appellant was injured in an accident at the Pensacola Civic Center, which is owned by Escambia County, during a concert promoted by Ogden. Appellant and his wife sued Escambia County. A final judgment was rendered in favor of appellant in the amount of $291,244.59 and in his wife's favor in the amount of $20,000.00. Additionally, costs in the sum of $4,260.03 were awarded. Escambia County fully satisfied the wife's judgment and the judgment for costs and paid appellant $100,000.00, the maximum amount of its liability under section 768.28(5), Florida Statutes.
Appellant then instituted an action against Ogden to recover the unpaid balance of his judgment against Escambia County. Appellant alleged that the agreement entered into between Ogden and Escambia County contained an indemnity clause, that he was a third party beneficiary of the agreement, and that Ogden was obligated to pay directly to him the unsatisfied balance of his final judgment.
The trial judge correctly dismissed the action. The provision of the agreement between Escambia County and Ogden relied on by appellant is an indemnity clause by which Ogden agreed to protect, defend, indemnify and hold harmless Escambia County from liability, damages, or expenses. The provision indicates an intent to benefit Escambia County, not third parties. Accordingly, the order on appeal is affirmed.
BARFIELD, C.J., and DAVIS, J., CONCUR.
BROWNING, J., DISSENTS WITH OPINION.
BROWNING, J., dissents.
I respectfully dissent.
I disagree with the majority's determination that the indemnity provisions of the agreement indicate that only Escambia County is intended to be benefited by its agreement with Ogden. This determination requires "quite a stretch" in view of the fact we review the trial court's order granting Ogden's motion to dismiss solely on the allegations of the appellant's complaint and attached agreement to discern the intent of the parties to the agreement. From the complaint and agreement it is apparent that Escambia County and Ogden intended to benefit Escambia County, but it is equally clear that they intended to accomplish this purpose by bestowing a benefit upon undetermined injured third parties who might later assert a claim against Escambia County, as did Kilpatrick. Most enforceable third-party agreements are intended to benefit primarily the parties to the agreement, but this does not prohibit their enforcement by a third party who receives a substantial benefit. Boston Old Colony Ins. Co., v. Gutierrez, 325 So.2d 416 (Fla. 3d DCA 1976). Otherwise, the only instance when a third-party agreement would be enforceable is when a gift is intended to a third party by one of the formal parties to an agreement, with no measurable benefit to either of the formal parties.
While I disagree with the majority's interpretation of the indemnity provisions discussed, another part of the indemnity provision, ignored by the majority, compels reversal of the trial court. The ignored portion of the indemnity provisions provides that Ogden "agrees to pay all ... judgments and settlement, including any amount paid in settlement" rendered against or made by Escambia County to injured third parties. This requirement unequivocally requires Ogden to pay Kilpatrick's judgment and irrefutably rebuts any contention that only Escambia County is intended to be benefitted by the agreement, because Ogden surely did not contract to pay itself a judgment, and Escambia County cannot be a judgment debtor of itself. Thus, this ignored provision can be construed only as a requirement of Ogden to pay any judgment covered by the agreement *494 against Escambia County and thereby benefit injured third parties such as Kilpatrick. The trial court and the majority, I believe, erred by ignoring this requirement.
Furthermore, a consideration of how the indemnity provisions of the agreement are implemented spotlights the substantial benefit intended for injured third parties. Ogden has no responsibility under the indemnity provisions until an injured third party asserts a claim against Escambia County. At that time, Ogden is required to pay all costs of defense, including attorney's fees. If the third party secures a settlement or judgment against Escambia County, Ogden must pay it. The check to satisfy any settlement, or judgment will be payable jointly to Escambia County and the third party. A release will be required by Ogden from the third party upon payment, and Escambia County will transfer its interest in the funds to the third party. The check will be deposited or otherwise disbursed by the third party at his or her discretion. Only Kilpatrick, and not Escambia County, will spend the settlement or satisfaction funds paid by Ogden. These predictable actions reveal a substantial benefit to Escambia County by shielding it from liability, and a corresponding substantial benefit to an injured third party who is the real party in interest as recipient of the funds.
Also, the factual determination of the trial court and the majority results in a misapplication of law. The appellate courts of this state have unerringly and consistently allowed third parties to sue in similar situations to the instant case. Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla.1971) (right of judgment creditor to maintain a direct action for bad faith against tortfeasor's liability carrier for recovery of the unpaid balance of a judgment in excess of policy limits recognized); Williams v. Union National Ins. Co. 528 So.2d 454 (Fla. 1st DCA 1988) (right of judgment creditor to proceed directly against tortfeasor's insurance company recognized, albeit case was decided on venue grounds); Hamer v. Kahn, 404 So.2d 847 (Fla. 4th DCA 1981) (right of third-party employee of subcontractor to sue general contractor's insurance agent for failure to procure liability insurance that would have paid employee's liability claim recognized). I see no justiciable reason why these cases are not dispositive of the case at bar. In any case, these precedents are much closer factually to the case at bar than any precedent advanced for affirmance by Ogden in its brief, or cited by the trial court, or by the majority.
Even assuming arguendo the foregoing precedents do not impel reversal of the trial court, I believe the majority's opinion conflicts with the public policy that motivated the Florida Supreme Court to permit direct third-party actions in similar circumstances. In Thompson, the Florida Supreme Court stated it is good public policy to encourage compromise and settlement of controversies and allowing injured third parties to sue a tortfeasor's insurance company supports that policy. Id., 250 So.2d at 263. The rationale of such policy is to permit the real party in interest the person entitled to be compensated to be paid as soon as practicable, which encourages settlements and avoids unnecessary delays and useless litigation. Rather than fostering direct and quick payment of Kilpatrick's judgment, the majority's opinion leaves the parties to endless haggling and litigation for no good reason other than "drill." This unpleasant circumstance can be avoided, and public policy adhered to, by reversal of the trial court.
The fallacy of Ogden's, the trial court's, and the majority's position is further highlighted when consideration is given to the effect of affirmance of the trial court on the probable future actions of the parties. After remand, Kilpatrick will, in all probability, seek enactment of a claims bill on the unpaid portion of his judgment under section 768.28(5), Florida Statutes (1991). If Kilpatrick is successful, which he probably will be, Ogden will have exhausted all avenues of delay, will have to pay Kilpatrick's judgment, and will also be responsible *495 for the attendant legal fees and costs incurred by Ogden and Escambia County. While this process consumes undeterminable years, Kilpatrick will be denied the compensation awarded to him by the jury for his injuries. The only benefit that will flow from the process is that Ogden will be afforded the welcomed opportunity of attempting to avoid paying what it agreed to pay under its agreement with Escambia County. I do not find this to be a laudatory goal that this court should sanction.
Last, but not least, the majority's opinion affords to Ogden the right to do indirectly what Odgen cannot do directly. Ogden, by manipulating the right of Kilpatrick to sue as a third-party beneficiary, is shielding itself from payment with the sovereign immunity vested in Escambia County. This has been prohibited in other cases and should not be "de facto" sanctioned by this court's affirmance of the trial court. Michigan Millers Mut. Ins. Co. v. Bourke, 607 So.2d 418 (Fla.1992); Martin v. National Union Fire Ins. Co., 616 So.2d 1143 (Fla. 4th DCA), rev. dismissed sub nom., Hummel Cos., Inc. v. Martin, 623 So.2d 494 (Fla.1993). Yet the manipulation of Escambia County's sovereign immunity by Ogden is clearly taking place. Kilpatrick and his wife were awarded in the underlying litigation judgment for $291,244.59 and $20,000.00, respectively, plus $4,260.03 in costs. Kilpatrick's wife was paid in full, and Kilpatrick was paid $100,000 as permitted under section 768.25, Florida Statutes (1991). That portion of Kilpatrick's judgment above the sovereign immunity cap remains unpaid. Assuming arguendo that Escambia County does not have sovereign immunity, I submit Ogden would have long since paid Kilpatrick's entire judgment in full without question. The majority should not permit this perversion of sovereign immunity by affirming a trial court's clear error.
For these reasons, I respectfully dissent.