[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-10436

_____

D. C. Docket No. 02-01675-CV-T-26-MAP

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2005
THOMAS K. KAHN
CLERK

MICHELLE MACOLA,

Plaintiff-Appellant,

INGE QUIGLEY,

Consolidated Plaintiff-Appellant,

versus

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(June 6, 2005)

Before ANDERSON and  WILSON, Circuit Judges, and OWENS[*], District Judge.

PER CURIAM:

_____

[*] Honorable Wilbur D. Owens, Jr., United States District Judge for the Middle District of Georgia, sitting by designation.

This appeal arises out of a state law bad faith claim against Government Employees Insurance Company ("GEICO") and is before this court under diversity jurisdiction. After one of its insureds, Mr. Frances Quigley,[1] caused a car wreck, GEICO failed to reach a settlement with Michelle Macola, an injured third party. Macola subsequently filed suit against Quigley and eventually won a judgment in excess of the GEICO policy limits. After Macola filed suit against Quigley, but before the verdict was returned, Quigley filed a statutory Civil Remedy Notice ("CRN") with the Florida Department of Insurance alleging that GEICO had acted in bad faith in failing to settle with Macola for the policy limits when it had the opportunity to do so. After the verdict was returned, Macola and Quigley filed similar common law bad faith actions against GEICO.

Florida law allows an insurer to "cure" alleged bad faith by paying the damages or correcting the circumstances giving rise to the violation within sixty days of the filing of a CRN. Fla. Stat. § 624.155(3)(d) (2004). During that sixty day period (and before the verdict in the underlying case), GEICO attempted to cure its alleged bad faith by tendering the personal injury policy limits to Quigley.

---

[1] Mr. Quigley caused the wreck and then died during the course of the underlying litigation. His wife, Inge Quigley, was named the personal representative of his estate, and in that capacity was substituted for Mr. Quigley in all related litigation. For the sake of simplicity, we will use "Quigley" to refer to Mr. Quigley or his estate.

The district court held that this tender cured any bad faith on the part of GEICO and granted GEICO's motion for summary judgment on Quigley's and Macola's claims. Quigley and Macola appealed, arguing that (1) GEICO's tender of the policy limits did not constitute an adequate cure under the circumstances of this case and (2) even if GEICO's tender did cure the statutory bad faith claim, it did not bar a common law bad faith action.

## I. Background

On May 18, 1999, Quigley negligently caused a car wreck in which Macola was injured. At the time of the accident, Quigley was insured under a policy issued by GEICO with a bodily injury liability limit of $300,000 and a property damage liability limit of $100,000. The day after the accident, Quigley's wife notified GEICO of the accident and of the fact that Quigley and Macola had suffered serious injuries. GEICO assigned Dale Junco to manage the claim.

On May 24, 1999, GEICO received a fax notifying it that Macola had retained an attorney, Michael Roe, and requesting Quigley's insurance information. Junco mailed the requested information to Roe on June 7, 1999.

On September 2, 1999, Junco talked to Roe, who told her that Macola had already undergone multiple surgeries, would require more, and was still out of

3

work. Roe promised to send Junco whatever medical information he had in the hopes of entering a settlement negotiation. He also told Junco that he believed this was a "policy limits" case.

On October 19, 1999, Roe sent GEICO a settlement offer seeking payment of the full personal injury policy limit as well as numerous items of property damages totaling $1,377.81. The letter included a traffic crash report and numerous medical records, and it stated that the settlement offer would expire in 21 days. In order to comply with its terms, the letter stated, GEICO would have to tender the requested sums at Roe's office and provide a copy of Quigley's insurance policy and an affidavit stating that no other insurance coverage was available.

On November 8, 1999, within the 21 day period laid out in the settlement offer, GEICO tendered the $300,000 bodily injury policy at Roe's office. In addition to the $300,000, GEICO sent a note requesting further clarification of the property damage claims as well as a release that was explicitly inapplicable to any claims for property damage. Roe did not respond for 120 days despite GEICO's repeated attempts to contact him during that time. He also never deposited the $300,000 draft that GEICO tendered.

On February 15, 2000, Macola returned GEICO's $300,000 check (along

4

with a letter rejecting GEICO's "counteroffer" of November 8) and filed suit against Quigley in Florida state court. In that suit, Macola asserted a claim for personal injuries, but no claim for property damages.[2] Prior to filing an answer in that case, Quigley offered to pay all of Macola's claimed property damages and tendered payment in the amount of $1,377.81. Macola rejected that tender and proceeded with the underlying litigation.[3]

In July 2000, five months <u>after</u> Macola filed the underlying action against Quigley and two years <u>before</u> the entry of judgment, Quigley, through her personal counsel ("Cardillo"), served GEICO with a statutory CRN. Therein, she alleged that GEICO violated § 624.155(1)(b)(1), Florida Statutes (2004), by failing to settle with Macola for the policy limits when it had the opportunity to do so. Under that statute, "no action shall lie" if the violator cures its bad faith by paying "the damages" or correcting "the circumstances giving rise to the violation" within 60 days of receiving the CRN. <u>See</u> Fla. Stat. § 624.155(3)(d); <u>Talat Enters., Inc. v. Aetna Cas. & Sur. Co.</u>, 753 So. 2d 1278, 1281-84 (Fla. 2000).

---

[2] Because Macola failed to assert a claim for property damages in the underlying action, the district court deemed this claim waived; we agree.

[3] After Quigley filed her answer but prior to the entry of judgment against her, GEICO filed a declaratory judgment action asking the Florida trial court to declare that Macola's claims had been settled. On January 5, 2002, the trial court granted Macola's motion for summary judgment in GEICO's declaratory judgment action, and the Second District Court of Appeal affirmed. <u>See</u> <u>GEICO General Ins. Co. v. Macola</u>, 816 So. 2d 618 (2002).

On August 25, 2000, within 60 days of the CRN, GEICO sent Cardillo a check for $300,000, the limit of Quigley's personal injury policy. Cardillo acknowledged receipt of the check but never deposited it. GEICO did not tender a check for the property damages that Macola claimed in the original settlement negotiations (but abandoned in the underlying action).

On July 9, 2002, the trial court entered a final judgment against Quigley in the amount of $1,541,941.61. On August 23, 2002, Macola filed a common law bad faith suit against GEICO. Macola's suit alleged that GEICO breached its duty of good faith to Quigley by failing to settle with Macola when the opportunity arose, by failing to timely inform Quigley of Macola's settlement offer, and by failing to timely advise Quigley of the likelihood of an excess judgment and how to avoid it. GEICO removed Macola's suit to federal court and filed an answer denying liability.

On June 27, 2003, Quigley filed a separate common law bad faith action against GEICO in federal district court. Because this suit was based on the same underlying facts as Macola's, the district court consolidated the two cases. As its fifth affirmative defense to Macola and Quigley's claims, GEICO argued that it had cured any bad faith by tendering the personal injury policy limits to Quigley within the 60 day post-CRN cure period provided for in § 624.155.

On December 15, 2003, both Macola and Quigley filed motions for partial summary judgment alleging that GEICO's cure theory was legally insufficient. That same day, GEICO filed a consolidated motion for summary judgment against Macola and Quigley, citing its cure theory as legally controlling. The district court denied Macola and Quigley's motions for partial summary judgment and granted GEICO's motion for summary judgment based on the cure theory.

## II. Discussion

It is clear that Florida law controls all issues in this appeal, and none of the relevant facts are disputed. The only questions before this court involve the interpretation and application of § 624.155, which provides as follows:

(1)(b) Any person may bring a civil action against an insurer when such person is damaged . . . [b]y the commission of any of the following acts by the insurer:

1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.

(3)(a) As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60-day time period shall not begin until a proper notice is filed.

(d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.

GEICO urges this court to hold that, under § 624.155, its post-CRN tender of the policy limits cured any bad faith and absolved it of any liability for the subsequent excess judgment. Macola and Quigley take the opposite position and alternatively argue that Florida law allows them to pursue a common law bad faith claim even if GEICO's tender did effect a cure of the statutory claim.

A. The Cure Issue

In Talat, this Court asked the Florida Supreme Court to determine whether payment of all contractual damages within 60 days of a CRN precluded a statutory first party bad faith claim for extra-contractual damages suffered prior to the CRN. 753 So. 2d at 1280. The Florida Supreme Court held that "an insurer need not immediately pay 100% of the damages claimed to flow from bad faith conduct" in order to effect a cure under § 624.155. Id. at 1282. However, Talat is distinguishable from the present case because it involved a first party bad faith claim in which there was no danger of an excess judgment. This distinction is suggested by the Talat court's statement that "[t]o cure an alleged violation and to avoid a civil action, an insurer must pay the claim (*sometimes in excess of policy limits in the third-party context)* before the sixty days expire." Id. (emphasis

8

added).  While this statement is dicta, it leaves open the possibility that an insurer may not be able to effect a cure by simply tendering the policy limits in the third party context.

Opinions from Florida's intermediate appellate courts do little to clarify the issue.  The Fifth District Court of Appeal has stated that an insurer effects a cure under § 624.255 when it tenders the policy limits after learning of a third party's intent to file suit for bad-faith failure to settle.  See Clauss v. Fortune Ins. Co., 523 So. 2d 1177, 1179 (1988).  However, the primary holding in Clauss was that the insurer was entitled to summary judgment because it had not violated its duty of good faith.  Id.  Even if the alternative holding in Clauss rested squarely on the cure issue, it would be in tension with a subsequent case from the Third District Court of Appeal.  In Hollar v. International Bankers Insurance Company, 572 So. 2d 937, 939 (1990), the Third District rejected an insurer's "self-serving reading of the term 'damages' as being confined to policy limits."  The court went on to state that, because the "function of the bad-faith claim is to provide the insured with an extra contractual remedy[,] . . . a tender of policy limits will not ordinarily satisfy the insured's full claim of damages for a bad-faith claim."  Id. at 939-40.  When read in conjunction, Clauss and Hollar offer no clear guidance on the questions currently before this court.

9

The only potentially relevant federal court opinion is Francois v. Illinois National Insurance Company, No. 01-8070 (S.D. Fla. Mar. 28, 2002), aff'd without opinion, 49 Fed. Appx. 290 (11th Cir. 2002). The facts in Francois were virtually indistinguishable from those in Clauss, and the district court followed Clauss in holding that the insurer had effected a cure pursuant to § 624.155. Id. at *6-7. However, as in Clauss, the Francois court alternately held that the insurer was entitled to summary judgment because it had not acted in bad faith. Id. at *8. Given its status as an alternative holding in an unpublished district court opinion,[4] Francois is of little persuasive value in this case. Because we are left with only the conflicting statements in Clauss and Hollar, we conclude that it is appropriate to certify the issue to the Florida Supreme Court.

B. The Election of Remedies/Satisfaction Issue

In the event that GEICO's tender of the policy limits did constitute a cure of Macola and Quigley's statutory bad faith claim, we must next consider whether that cure extinguished any common law claims. The district court held that Quigley elected the statutory remedy when she filed the CRN and therefore was estopped from pursuing a common law claim. It alternately held that, should the doctrine of

_____

[4] It is unclear whether the unpublished affirmance was based on the relevant alternative ground.

10

election of remedies not apply, GEICO's tender had fully satisfied any bad faith claim. We address these alternate holdings in turn.

1. Election of Remedies

"Under Florida law . . . the election of remedies doctrine applies only where the remedies in question are coexistent and inconsistent." Barbe v. Villenueve, 505 So. 2d 1331, 1332 (Fla. 1987). Remedies are only inconsistent where "the allegations of facts necessary to support one remedy are substantially inconsistent with those necessary to support the other . . .." Id. at 1333 (internal quotation omitted). Since the statutory and common law bad faith claims in this case depend upon substantially similar factual allegations, they appear to be consistent under Florida law.

We also note that the statutory remedy at issue in this case "does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state." Fla. Stat. § 624.155(8) (2004). That distinguishes the instant litigation from cases like Mandico v. Taos Construction, Inc., 605 So. 2d 850, 853 (Fla. 1992), wherein the Florida Supreme Court held that an employee who had received workers' compensation benefits had elected an exclusive remedy and was estopped from bringing a common law claim against his employer. See Fla. Stat. §440.11(1) (2002) (providing that workers' compensation

11

benefits are "exclusive and in place of all other liability"); Thornber v. Fort Walton Beach, 568 So. 2d 914, 918 (Fla. 1990) ("Whether a statutory remedy is exclusive or merely cumulative depends upon the legislative intent as manifested in the language of the statute."). Because the statutory and common law remedies depend upon the same nucleus of facts and are cumulative rather than exclusive, the district court erred in holding that they are inconsistent as a matter of Florida law. Therefore, under Barbe, the district court erred in holding that Quigley's CRN constituted an election of remedy that estopped her from pursuing a common law bad faith claim.

2. Satisfaction

While we are confident that Quigley's decision to file a CRN did not estop her common law bad faith claim, we are less certain about the effect of GEICO's tender. As noted above, the statute provides that its remedy does not preempt a common law cause of action. Fla. Stat. § 624.155(8). However, that same statutory provision also provides that "[a]ny person may obtain a judgment under either a common-law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies." Id. This would seem to be consistent with general Florida law, which provides that "only a full satisfaction of the right asserted will estop the plaintiff from pursuing other consistent remedies. All

consistent remedies may in general be pursued concurrently even to final adjudication; but the satisfaction of the claim by one remedy puts an end to other remedies." Barbe, 505 So. 2d at 1333 (quoting Am. Process Co. v. Florida White Pressed Brick Co., 47 So. 942, 944 (Fla. 1908)); see also Sec. & Inv. Corp. v. Droege, 529 So. 2d 799, 802 (Fla. 4th DCA 1988) ("[I]f the remedies are concurrent or cumulative, and logically can coexist on the same facts, the doctrine of election does not apply until the injured party has received full satisfaction for his injuries.").

The district court held that GEICO's tender constituted a full satisfaction of Quigley's bad faith claim. If this holding is correct, then Quigley is estopped from pursuing a common law claim.[5] In other words, the district court believed that a full and valid cure[6] – i.e., the payment of the full policy limits within the required sixty days – also constituted a full satisfaction of the bad faith claim. On the other hand, Appellants argue that payment of the policy limits does not fully satisfy their bad faith claim, which they argue includes not only the contractual policy limits, but also damages resulting from GEICO's actions that left Quigley exposed to an

---

[5] Because Macola's bad faith claim is derivative of Quigley's, satisfaction of Quigley's claim would necessarily extinguish Macola's as well. See Fid. & Cas. Co. of New York v. Cope, 462 So. 2d 459, 461 (Fla. 1995).

[6] Of course, our discussion of the satisfaction issue assumes, arguendo, that there has been a full and valid cure. Otherwise, the satisfaction issue is moot.

13

excess judgment. We have found no controlling Florida cases, and there seem to be conflicting policy arguments. We are already certifying the cure issue to the Florida Supreme Court, and we conclude that it is appropriate to certify this issue as well.

## III. Certification

"Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary *Erie* guesses and to offer the state court the opportunity to interpret or change existing law." Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1274 (11th Cir. 2005). Because the issues in this case may well impact the development of Florida's insurance law, we are reluctant to proceed without clear guidance from Florida's courts. We therefore certify the following questions to the Florida Supreme Court:

> (1) IN THE CONTEXT OF A THIRD PARTY BAD FAITH CLAIM WHERE THERE IS A POSSIBILITY OF AN EXCESS JUDGMENT, DOES AN INSURER "CURE" ANY BAD FAITH UNDER § 624.155 WHEN, IN RESPONSE TO A CIVIL REMEDY NOTICE, IT TIMELY TENDERS THE POLICY LIMITS AFTER THE INITIATION OF A LAWSUIT AGAINST ITS INSURED BUT BEFORE THE ENTRY OF AN EXCESS JUDGMENT?

> (2) IF SO, DOES SUCH A CURE OF THE STATUTORY BAD FAITH CLAIM CONSTITUTE A FULL SATISFACTION OF THE JUDGMENT SUCH THAT THE INSURED AND DERIVATIVE INJURED THIRD PARTIES ARE BARRED FROM BRINGING A

14

COMMON LAW BAD FAITH CLAIM TO RECOVER THE DIFFERENCE BETWEEN THE POLICY LIMITS AND THE EXCESS JUDGMENT?

Our statement of the questions to be certified is not meant to limit the scope of inquiry by the Florida Supreme Court. "This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given." Washburn v. Rabun, 755 F.2d 1404, 1406 (11th Cir. 1985). Similarly, an answer to one of the questions may render resolution of the other one unnecessary. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court. **QUESTIONS CERTIFIED.**