953 So.2d 451 (2006)
Michelle MACOLA, et al., Appellants,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellee.
No. SC05-1021.
Supreme Court of Florida.
October 26, 2006.
Rehearing Denied March 27, 2007.
*452 Shea T. Moxon, Angela E. Rodante, and Dale M. Swope of Swope and Rodante, P.A., Tampa, FL, and Roy D. Wasson of Wasson and Associates, Miami, FL, Paul T. Cardillo, Tampa, FL, and Lefferts L. Mabie, III, Tampa, FL, for Appellants.
B. Richard Young and Stephen D. Gill of Young, Bill, Fugett and Roumbos, P.A., Pensacola, FL, for Appellee.
Philip M. Burlington and Bard D. Rockenbach of Burlington and Rockenbach, P.A., West Palm Beach, FL, on behalf of the Academy of Florida Trial Lawyers; Alyssa M. Campbell of Williams, Montgomery and John Ltd., Chicago, IL, on behalf of Property Casualty Insurers Association of America; Tracy R. Gunn of Fowler, White, Boggs, Banker, P.A., Tampa, FL, on behalf of Florida Defense Lawyers' Association; Paul L. Nettleton of Carlton Fields, P.A., Miami, FL, on behalf of State Farm Mutual Automobile Insurance Company; and Ronald L. Kammer and Andrew E. Grigsby of Hinshaw and Culbertson, LLP, Miami, FL, Laura A. Foggan, John C. Yang and Anthony E. Orr of Wiley, Rein and Fielding, LLP, Washington, D.C., on behalf of Complex Insurance Claims Litigation Association, as Amici Curiae.
PARIENTE, J.
We have for review two questions of Florida law certified by the United States Court of Appeals for the Eleventh Circuit.[1] Because both appellants have filed only common law third-party bad faith causes of action, we rephrase the certified questions into a single question:
DOES THE TENDERING OF THE POLICY LIMITS BY AN INSURER IN RESPONSE TO THE FILING OF A CIVIL REMEDY NOTICE UNDER SECTION 624.155, FLORIDA STATUTES (2005), BY THE INSURED AFTER THE INITIATION OF A LAWSUIT AGAINST THE INSURED BUT BEFORE ENTRY OF AN EXCESS JUDGMENT PRECLUDE A COMMON LAW BAD FAITH CAUSE OF ACTION BY THE INSURED AND INJURED THIRD PARTIES?
For the reasons that follow, we answer the rephrased certified question in the negative.[2]

*453 FACTS AND PROCEDURAL HISTORY
This case arises out of a common law cause of action for third-party bad faith brought by Michelle Macola, the injured third party, and Inge Quigley, the insured, (jointly referred to as the appellants) against Government Employees Insurance Company (GEICO). On May 18, 1999, Inge's husband, Frances Quigley, negligently caused an automobile accident that resulted in personal injuries and property damage to Macola.[3] At the time of the accident, Quigley was insured by GEICO under an insurance policy that contained a bodily injury liability limit of $300,000 and a property damage liability limit of $100,000. On May 19, 1999, Inge Quigley notified GEICO of the accident and informed the insurer that both her husband and Macola had suffered serious injuries in the accident. GEICO assigned an insurance adjuster to handle the claim.
On October 19, 1999, Macola's attorney, Michael Roe, sent GEICO a settlement offer seeking payment of the bodily injury liability limit under the insurance policy, and property damage in the amount of $1,377.81. This offer did not result in a settlement agreement. Roe filed suit on behalf of Macola against Quigley in Florida state court, asserting a claim for personal injuries but not for property damage. GEICO assigned counsel to defend Quigley in this suit. On July 11, 2000, after suit had been filed but before entry of an excess judgment, Paul Cardillo, Quigley's personal counsel, filed a statutory Civil Remedy Notice of Insurer Violation ("civil remedy notice") with the Department of Insurance against GEICO. Quigley alleged a statutory violation by GEICO's failure to settle with Macola for the policy limits when the insurer had an opportunity to do so.
On August 25, 2000, within sixty days after the civil remedy notice was filed, GEICO sent Cardillo a letter that stated in part:
Enclosed is a check in the amount of $300,000.00 which represents the entirety of the Quigley's policy limits, and a policy release which we request our insured sign and return to us. By the tender of our policy limits, we have cured the Civil Remedies Complaint. Mr. and Mrs. Quigley are now free to use the $300,000.00 in order to settle all claims brought against them as a result of this accident.
Cardillo acknowledged receipt of the check and the release but stated that his acknowledgment did not constitute acceptance. Cardillo did not deposit or cash the check. Macola's civil suit against Quigley proceeded to trial and on July 9, 2002, the trial court entered a final judgment against Quigley in the amount of $1,541,941.61 for Macola's personal injuries. The trial court also awarded Macola attorney's fees in the amount of $212,500.
Thereafter, Macola filed a common law third-party bad faith suit against GEICO in Florida state court, alleging that GEICO breached its duty of good faith to Quigley by failing to settle with Macola when the insurer had the opportunity to do so. Macola further alleged that GEICO failed to timely inform Quigley of Macola's settlement offer, and failed to timely advise Quigley of the likelihood of a judgment exceeding the policy limits and what actions could be taken to avoid an excess judgment. GEICO removed the case to *454 federal court and filed an answer denying liability and raising eight affirmative defenses.
Quigley then filed a separate common law third-party bad faith action against GEICO in federal court, asserting the same allegations as Macola. Because both causes of action were based on the same underlying facts, the district court consolidated the two cases. As its fifth affirmative defense to both complaints, GEICO asserted that it had cured any statutory third-party bad faith by tendering the bodily injury liability limit within sixty days of the filing of the civil remedy notice. The appellants filed motions for partial summary judgment in which they alleged that GEICO's cure argument was legally insufficient. GEICO filed a consolidated motion for summary judgment against the appellants in which it contended that the cure theory was legally controlling. The district court denied the appellants' motion for partial summary judgment and granted GEICO's motion for summary judgment based on the insurer's theory that the tender of the $300,000 cured any statutory third-party bad faith.[4] The district court also concluded that under the election of remedies doctrine, Quigley's filing of the civil remedy notice estopped the appellants' common law third-party bad faith action, and, in the alternative, that GEICO's tender of the policy limits constituted a full satisfaction of the common law claim.
On appeal, the appellants argued two issues: (1) GEICO's tender of the policy limits did not constitute an adequate cure under the circumstances of this case, and (2) even if GEICO's tender did cure the statutory third-party bad faith claim, it did not bar a common law third-party bad faith action. The Eleventh Circuit determined that "because the statutory and common law bad-faith claims . . . depend upon substantially similar factual allegations, they appear to be consistent under Florida law." Macola v. Gov't Employees Ins. Co., 410 F.3d 1359, 1364 (11th Cir. 2005). The Eleventh Circuit therefore concluded that the district court erred in holding that Quigley's filing of the civil remedy notice constituted an election of remedies that estopped Quigley from pursuing a common law third-party bad faith action. See id.[5]
The Eleventh Circuit also addressed both issues raised by the appellants but certified them to this Court for resolution.

ANALYSIS
The rephrased certified question involves a pure question of law that arises from undisputed facts and is therefore subject to de novo review. See Global Travel Mktg., Inc. v. Shea, 908 So.2d 392, 396 (Fla.2005).
A. Common Law Third-Party Bad Faith Claim
When handling claims against its insured, an insurer "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence *455 should exercise in the management of his own business." Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980). More specifically, the Court explained in Gutierrez that
when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.
Id. at 785 (citations omitted); see also Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1125 (Fla.2005) ("Under liability policies . . . insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers. . . . This placed insurers in a fiduciary relationship with their insureds . . . [and] courts began to recognize that insurers `owed a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement.'") (first alteration in original) (quoting State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla.1995)); Berges v. Infinity Ins. Co., 896 So.2d 665, 672 (Fla.2004) ("It has long been the law of this State that an insurer owes a duty of good faith to its insured. See Gutierrez, 386 So.2d at 785. Thus, `[t]he insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.' Id.") (alteration in original).
In Thompson v. Commercial Union Insurance Co., 250 So.2d 259, 264 (Fla.1971), we recognized the right of an injured third party to maintain an action against the insurer under the common law to recover the amount of an excess judgment, based on the insurer's alleged breach of the duty of good faith in handling the insurance claim. Although a third party was allowed to bring a common law bad faith cause of action directly against an insurer, the Court later clarified that its decision in Thompson was not meant to change either the basis or theory of recovery regarding such actions:
We did not extend the duty of good faith by an insurer to its insured to a duty of an insurer to a third party. The basis for an action remained the damages of an insured from the bad faith action of the insurer which caused its insured to suffer a judgment for damages above his policy limits. Thompson merely allowed the third party to bring such an action in his own name without an assignment.
Fidelity & Cas. Co. v. Cope, 462 So.2d 459, 461 (Fla.1985). However, this common law cause of action arose only in the third-party context, and did not authorize common law first-party actions by an insured against its own insurer for failing to act in good faith when settling a claim brought by the insured against its insurer, such as in the uninsured motorist context or other claims for first-party benefits. If an insurer acted in bad faith in settling a claim filed by its insured, the only common law action available to the insured was a breach of contract action against the insurer in which damages were limited to those *456 contemplated by the parties in the insurance policy. See Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So.2d 1278, 1281 (Fla.2000).
B. Section 624.155, Florida Statutes (2005)
In 1982, the Legislature enacted section 624.155. See ch. 82-243, § 9, Laws of Fla. This statute was "designed and intended to provide a civil remedy for any person damaged by an insurer's conduct." Ruiz, 899 So.2d at 1124. Section 624.155(1)(b)(1), Florida Statutes (2005), provides:
(1) Any person may bring a civil action against an insurer when such person is damaged:
. . . .
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. . . .
Thus, section 624.155(1)(b)(1) created a statutory cause of action for first-party bad faith, see Talat, 753 So.2d at 1283, and also codified our decisions in Thompson and Cope authorizing a third party to bring a bad faith action under the common law. See State Farm Fire Cas. Co. v. Zebrowski, 706 So.2d 275, 277 (Fla.1997). Therefore, the same obligations of good faith that existed for insurers dealing with their insureds in the third-party context were extended by statute to the first-party context.
As part of the statutory cause of action, section 624.155(3)(a), Florida Statutes (2005), sets forth the notice provisions and requires as a condition precedent to bringing suit that both the insurer and the Department of Financial Services receive written notice of the alleged statutory bad faith violation. Section 624.155(3)(d), Florida Statutes (2005), affords the insurer an opportunity to cure the alleged violation, and provides that "[n]o action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."
In the event the insurer does not cure the alleged violation within the sixty-day period in section 624.155(3)(d), the claimant may proceed with the civil action for statutory bad faith. In addition to creating a statutory bad faith cause of action with conditions precedent, the Legislature also provided that
[t]he civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state. Any person may obtain a judgment under either the common-law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies. This section shall not be construed to create a common-law cause of action. The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits.
§ 624.155(8), Fla. Stat. (2005).
C. Effect of Tender of Policy Limits After Civil Remedy Notice but Before Excess Judgment
The rephrased certified question requires us to decide what effect the "cure" provision, section 624.155(3)(d), has on a common law third-party bad faith action when the insured files a notice of a statutory violation after the time for settlement with the injured party has expired but before the entry of an excess judgment. *457 However, before discussing the cure provision, we note that the plain language of section 624.155(8) provides that that the civil remedy in section 624.155 "does not preempt any other remedy or cause of action provided for pursuant to . . . the common law of this state." (Emphasis supplied.) Section 624.155(8) also provides that although a statutory cause of action for third-party bad faith does not preempt a common law cause of action, a claimant "shall not be entitled to a judgment under both remedies." "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla.2005). The language of section 624.155(8) expresses legislative intent not to preclude or limit common law third-party bad faith actions as those actions existed prior to the enactment of the statute.
Rather than limit the type of action available to a claimant, the statute merely ensures that a claimant does not obtain a double recovery by receiving separate judgments when proceeding with two different remedies. Unlike a first-party bad faith action, which must be brought under the statute, a third-party bad faith action can be pursued under both the common law and the statute. However, under section 624.155(8), the claimant is precluded from recovering judgments under both the common law and statutory causes of action. This is similar to the doctrine of satisfaction, which allows all consistent remedies to "be pursued concurrently even to final adjudication; but the satisfaction of the claim by one remedy puts an end to the other remedies." Barbe v. Villeneuve, 505 So.2d 1331, 1333 (Fla.1987) (quoting Am. Process Co. v. Fla. White Pressed Brick Co., 56 Fla. 116, 47 So. 942, 944 (1908)).
Regarding section 624.155(3)(d), we clearly delineated the effect of this cure provision on a first-party action for bad faith in Talat. Because a cause of action for extracontractual damages for first-party bad faith was unavailable under the common law, we strictly construed the civil remedy statute and held that the tender of the policy limits within the sixty-day period cured any alleged violation of subsection (1)(b)(1). See Talat, 753 So.2d at 1283-84. We explained that the only remedy was statutory and that the statute conditioned the remedy on notice by the insured and failure by the insurer to pay the damages within the cure period. See id. In other words, in the first-party context, "[t]he statutory cause of action for extra-contractual damages simply never comes into existence until expiration of the sixty-day window without the payment of the damages owed under the contract." Id. at 1284.
We have never construed the cure provision in the context of a third-party bad faith action. And, the difference between first-party and third-party bad faith causes of action is critical. As we recently explained in Ruiz, a third-party bad faith cause of action arises when the insurer fails to act in good faith in handling a claim brought by a third party against an insured, whereas a first-party bad faith cause of action arises when an insurer fails to act in good faith in the processing of the insured's own first-party claim. See 899 So.2d at 1125. Although section 624.155 is in derogation of the common law with respect to first-party bad faith, the statute codifies the common law with respect to third-party bad faith. Compare Talat, 753 So.2d at 1283 ("[T]he civil remedy provided in subdivision (1)(b)1 was not in existence for first-party insureds before the adoption of the civil remedy statute."), with Zebrowski, 706 So.2d at 277 ("[T]he *458 enactment of section 624.155(1)(b)(1) had the effect of codifying Thompson . . . and Cope. . . ."). Thus, the premise for our decision in Talatthat the insured had no remedy without the statutedoes not apply to third-party actions.
Further, "the essence of a third-party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim." Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179, 181 (Fla.1994) (citing Cope, 462 So.2d at 460). Accordingly, where the underlying tort action against the insured no longer exists, either because the injured party has released the insured from liability or the underlying judgment has been satisfied, the cause of action for third-party bad faith no longer exists. Id. However, the tender of the policy limits to the insured when the underlying tort action is still pending does not eliminate the underlying tort action or the insured's exposure to an excess verdict. Thus, interpreting section 624.155(3)(d) to allow the tender of the policy limits after the time period to settle has expired to preclude a common law cause of action for third-party bad faith puts the insured in a worse position than he or she would have been in had the Legislature not enacted section 624.155. This result would be inconsistent with the plain language of section 624.155(8) that the civil remedy statute "does not preempt any other remedy or cause of action provided for pursuant to . . . the common law of this state."
Accordingly, we answer the rephrased certified question in the negative. We hold that an insurer's tender of the policy limits to an insured in response to the filing of a civil remedy notice under section 624.155 by the insured, after the initiation of a lawsuit against the insured but before entry of an excess judgment, does not preclude a common law cause of action against the insurer for third-party bad faith.
D. This Case
In this case, prior to filing a lawsuit against Quigley, Macola, the third-party plaintiff, had offered to settle if GEICO paid $1,377.81 for property damage and the bodily injury liability policy limit. However, the parties did not reach a settlement. When Quigley's estate filed the civil remedy notice after Macola's lawsuit against the estate had been filed but before the excess judgment had been entered, GEICO's tender of the policy limits to Quigley did not eliminate the risk of an excess judgment or result in the settlement of Macola's lawsuit. GEICO did not obtain a release of liability from Macola for its insured. Rather, GEICO sought to have its insured, Quigley, sign a release relieving GEICO of liability. Thus, this case is not like either Cope or Zebrowski, upon which GEICO relies in asserting that a common law third-party bad faith action is precluded in this case.
In Cope, after filing a bad faith cause of action against one of the insurers involved in the case, the insurer and the injured third party reached a settlement agreement that satisfied a portion of the excess judgment and released all claims against the insurer and the insureds. See 462 So.2d at 460. In Zebrowski, the injured third party, who received a judgment within the policy limits, sought to maintain a bad faith cause of action against the insurer even though the insurer had satisfied the judgment. See 706 So.2d at 275. In both Cope and Zebrowski, the bad faith cause of actions were eliminated when the tort actions against the insureds were resolved.
*459 Similarly, in Cunningham, we approved a procedure whereby the bad faith action was to be tried before the underlying negligence action because the parties stipulated that if there was no bad faith, the third party would settle for the policy limits and there would be a full release of the insured. See 630 So.2d at 180, 182. In this case, Quigley was exposed to an excess judgment when GEICO failed to successfully settle the claim with Macola. While GEICO's tender of the policy limits may be used by GEICO as evidence of its good faith (or conversely by Quigley and Macola as further evidence of bad faith), the tender of the policy limits after the filing of the civil remedy notice did not eliminate the underlying tort action, which gave rise to the common law third-party bad faith cause of action against the insurer.

CONCLUSION
For the reasons explained above, we answer the rephrased certified question in the negative. Having answered this question, we return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
LEWIS, C.J., and ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs in result only.
NOTES
[1] 

(1) IN THE CONTEXT OF A THIRD PARTY BAD FAITH CLAIM WHERE THERE IS A POSSIBILITY OF AN EXCESS JUDGMENT, DOES AN INSURER "CURE" ANY BAD FAITH UNDER § 624.155 WHEN, IN RESPONSE TO A CIVIL REMEDY NOTICE, IT TIMELY TENDERS THE POLICY LIMITS AFTER THE INITIATION OF A LAWSUIT AGAINST ITS INSURED BUT BEFORE ENTRY OF AN EXCESS JUDGMENT?
(2) IF SO, DOES SUCH A CURE OF THE STATUTORY BAD FAITH CLAIM CONSTITUTE A FULL SATISFACTION OF THE JUDGMENT SUCH THAT THE INSURED AND DERIVATIVE INJURED THIRD PARTIES ARE BARRED FROM BRINGING A COMMON LAW BAD FAITH CLAIM TO RECOVER THE DIFFERENCE BETWEEN THE POLICY LIMITS AND THE EXCESS JUDGMENT?
Macola v. Gov't Employees Ins. Co., 410 F.3d 1359, 1365 (11th Cir.2005). We have jurisdiction. See art. V, § 3(b)(6), Fla. Const.
[2] We also note that we were not asked to consider whether the facts in this case would give rise to a common law cause of action for third-party bad faith, and by the recitation of the facts we do not suggest that such facts would constitute a common law third-party bad faith cause of action.
[3] Frances Quigley died during the course of the underlying litigation. His wife, Inge Quigley, was named personal representative of the estate and substituted for Frances Quigley in all related litigation. As did the Eleventh Circuit, we use "Quigley" to refer to Frances Quigley or his estate.
[4] Because Macola failed to assert a claim for property damage, both the district court and the Eleventh Circuit considered this claim waived. Ironically, it was GEICO's challenge to the property damage initially claimed by Macola during settlement negotiations that hindered a possible settlement between the parties. Again, as explained in footnote 2, in reciting this fact we do not express any opinion as to whether a common law cause of action exists against GEICO for third-party bad faith because that issue is not before us.
[5] Macola's third-party bad faith claim is derivative of Quigley's claim. Thus, if the filing of the civil remedy notice estopped Quigley from pursuing a common law third-party bad faith action, it also estopped Macola from pursuing this action.