[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14651
Non-Argument Calendar

_____

D.C. Docket No. 8:19-cv-01293-TPB-AAS

LINDA J. ROBLES, as Personal
Representative of the Estate of
Miguel A. Mercado, deceased,

Plaintiff - Appellant,

versus

GEICO INDEMINITY COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 29, 2021)

Before WILSON, NEWSOM, and ANDERSON Circuit Judges.

PER CURIAM:

This is a third-party insurance bad-faith action brought by Linda Robles, as Personal Representative of the Estate of Miguel M. Mercado (Ms. Robles) against GEICO Indemnity Company (GEICO). At the district court level, GEICO filed a motion for summary judgment, arguing that no reasonable jury could find that GEICO acted in bad faith.[1] Ms. Robles appeals the district court's order adopting the magistrate judge's report and recommendation to grant GEICO's motion for summary judgment.

On appeal, Ms. Robles argues that the district court erroneously adopted the magistrate judge's report and recommendation because it failed to adhere to Florida insurance law and that GEICO's conduct created a genuine issue of fact therefore precluding summary judgment.[2] After careful review, we affirm.

## I.    BACKGROUND

Because we write for the parties, we assume familiarity with the facts and set out only those necessary for the resolution of this appeal.

On October 19, 2008, Aaron Swanson's vehicle rear-ended a truck while Miguel Mercado, a City of Tampa employee, was working in front of the truck. The accident killed Mr. Mercado. GEICO insured Mr. Swanson under an

---

[1] The parties agreed to GEICO's "Statement of Undisputed Facts."
[2] Florida law authorizes a cause of action by which the victim—here, Ms. Robles on behalf of the Estate of Mr. Mercado—may maintain suit directly against the tortfeasor's insurer to collect on a judgement against the insured.

automobile liability policy that provided bodily injury (BI) coverage for $10,000 per person.

On October 22, 2008, the day after GEICO learned of the accident, GEICO claims examiner Helen Gerdjikian advised Mr. Swanson that the claims against him could exceed his coverage, that he would be personally liable for any amount over his policy limits, and that he had the right to obtain personal counsel.  GEICO soon after determined that the insured was at fault and that it would tender the Estate of Mr. Mercado the $10,000 policy limit.

On October 30, 2008, Ms. Gerdjikian sent Ms. Mercado, the widow of Mr. Mercado, a letter and advised her that GEICO would tender Mr. Swanson's $10,000 BI policy limit. That same day, a representation agreement was executed with Christine Franco, Esq., from Franco and Franco, P.A to handle the Estate of Mr. Mercado.

Ms. Gerdjikian contacted Ms. Franco's office by phone or letter on eight separate occasions between November 2008 and April 2009 to confirm whether Ms. Franco represented the Estate of Mr. Mercado and to offer to tender the $10,000 once GEICO received a letter of representation.  Even though Ms. Gerdjikian's attempts were unsuccessful, she continued to update Mr. Swanson of her efforts and his potential liability.

3

In January 2009, Ms. Gerdjikian mailed the check for the BI policy limit and a release to Ms. Mercado. Ms. Gerdjikian then followed-up twice with Ms. Mercado in June 2009 and July 2009 regarding the status of the unexecuted check and release. Ms. Gerdjikian sent letters to Mr. Swanson in March, April, May, and June stating there was no change of status regarding the check and release.

On August 3, 2009, Ms. Franco mailed GEICO a letter of representation. Ms. Franco offered to settle the claims against Mr. Swanson in exchange for payment of the policy's BI limits and specified property damage amounts. Ms. Franco also requested strict performance with her terms and specified the release should not contain any hold harmless or indemnification language for anyone other than Ms. Swanson. Ms. Franco's letter requested a timely response on or around August 31, 2009.

On August 6, 2009, the day after GEICO received the letter, Ms. Gerdjikian faxed an affidavit of coverage and certified copy of the policy to Ms. Franco. The next day, Ms. Gerdjikian faxed Ms. Franco a blank affidavit and a proposed release that included a hold harmless and indemnity agreement. On August 11, 2009, Ms. Gerdjikian sent a letter to Ms. Franco and stated that she "previously faxed a copy of our release and affidavit for [Ms. Franco's] review to see if it would suffice [her] requirements." The same day, Ms. Gerdjikian sent Mr. Swanson a letter and included a copy of the August 3, 2009, demand, and an affidavit of coverage for

him to complete. Ms. Gerdjikian advised Mr. Swanson that he could be personally liable for judgment over his policy limits if the claim did not settle.

On August 12, 2009, Ms. Gerdjikian sent a letter to Ms. Franco which stated that GEICO issued a check for the personal property and a check for the BI policy limits. The letter also stated in relevant part: "Again, I am requesting that if you need to change anything, please do so and forward to my attention as soon as possible." GEICO immediately issued the checks and sent them to Ms. Franco.

On August 17, 2009, Ms. Gerdjikian faxed Mr. Swanson's completed affidavit to Ms. Franco. On the cover page, Ms. Gerdjikian asked whether the affidavit was acceptable. On August 24, 2009 (approximately one week before Ms. Franco's response deadline), Ms. Gerdjikian sent another follow-up letter to Ms. Franco about the release and affidavit, and again requested that Ms. Franco advise if they were acceptable. On October 28, 2009, Ms. Gerdjikian followed-up again.

Ms. Franco did not respond to any of Ms. Gerdjikian's seven pre-deadline written communications. Instead, on November 12, 2009—two months after Ms. Franco's imposed response deadline—GEICO received a rejection letter from Ms. Franco which took issue with the proposed release that included a hold harmless and indemnity agreement. The next day, Ms. Gerdjikian responded to Ms. Franco's rejection letter in relevant part providing that, "The release was sent to be

5

reviewed by you and to make any necessary changes, that is why it was blank." Ms. Franco did not respond or make any changes to the complained-of release.

In December 2009, Ms. Robles filed a wrongful death action against Mr. Swanson. A final judgment was entered against Mr. Swanson for just under $5,000,000 in September 2016. This bad faith suit followed in federal district court. GEICO then moved for summary judgment, arguing that no reasonable jury could conclude GEICO acted in bad faith. Ms. Robles opposed the motion. The district court later adopted the magistrate judge's report and recommendation to grant GEICO's motion for summary judgement. Ms. Robles appealed the decision.

## II.    STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment, "applying the same legal standards as the district court and construing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[M]ere conclusions

6

and unsupported factual allegations are legally insufficient to defeat a summary

judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per

curiam).

### III.    DISCUSSION

Upon Ms. Robles[3] bringing a single claim against GEICO alleging bad faith

in the handling of the claim, GEICO moved for summary judgment.  GEICO

contended that it acted diligently to resolve the claim and performed its duties for

its insured, however, there was no reasonable opportunity for settlement.  The

district court ruled in favor of GEICO.

Ms. Robles now argues on appeal that the district court erroneously applied

Florida's bad faith insurance law.  Ms. Robles also contends that the district court

invaded the province of the jury as to whether GEICO acted diligently and

reasonably when specifically considering GEICO's response to the Ms. Roble's

settlement demand letter sent on August 2, 2009.  According to Ms. Robles, the

undisputed facts as assessed by the district court create a genuine issue of material

fact.

Florida law recognizes third-party bad faith actions brought by the injured

third party against the insured's liability carrier.  *QBE Ins. Corp. v. Chalfonte*

---

[3] Within this section, the actions attributed to Ms. Robles are, at some points, those of the Ms. Franco, the attorney who handled the discussions with the Ms. Gerdjikian, who worked on behalf of GIECO.

*Condo. Apt. Ass'n, Inc.*, 94 So. 3d 541, 545–46 (Fla. 2012). "[A] third-party bad faith cause of action arises when the insurer fails to act in good faith in handling a claim brought by a third party against an insured." *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 457 (Fla. 2006). The basis of the claim focuses on the insurer's duty of good faith to the insured as opposed to any duty of the insurer to a third-party. *Id.*

"[T]he critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018). An insurer is obligated "to act in good faith in the investigation, handling, and settling of claims brought against the insured." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 683 (Fla. 2004). This good faith duty, among other things, requires "the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (per curiam).

Whether an insurer acted in bad faith is determined under a "totality of the circumstances" standard. *Harvey*, 259 So. 3d at 7. The focus of a claim of bad faith is on the actions "of the insurer in fulfilling its obligations to the insured," and

not on the actions of the claimant. *Id.* "Although bad faith is ordinarily a question for the jury, both this court and Florida courts have granted summary judgment where there is no sufficient evidence from which any reasonable jury could have concluded that there was bad faith on the part of the insurer." *Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1278 (11th Cir. 2021) (internal quotation marks and citation omitted) (alteration adopted).

Ms. Robles primarily argues that GEICO acted in bad faith when it failed to accept the offer made by Ms. Robles on August 3, 2009. The argument goes: GEICO failed to fulfill its obligations to the insured, Mr. Swanson, when it did not accept the terms of that letter in strict compliance. Ms. Robles contends that a good-faith acceptance of such terms would only be possible where GEICO drafted the release it later sent to Ms. Robles to exclude any hold harmless or indemnification language as opposed to putting the onus on Ms. Robles to draft a release to her liking. As such, GEICO's failure to accept the Ms. Robles's offer in such a manner, which is not specifically requested in the letter itself, was to the detriment of the insured.

While it is true that the insurer owes a fiduciary duty to act in the insured's best interest, Ms. Robles' argument suffers from several flaws. First, this court has rejected arguments with a singular focus on allegedly-overbroad release language as an attempt to create a genuine issue of fact. *Id.* at 1279. Such singular focus

9

ignores the "totality of the circumstances" analysis required under Florida law.  Of course, the August 3, 2009 demand letter is important, but it cannot be taken out of context where Ms. Gerdjikian attempted to discuss settlement matters several times with Ms. Robles before the letter was sent, while Ms. Robles's "offer" was open, and after that point as well.  Furthermore, Ms. Gerdjikian, acting on behalf of GEICO, maintained contact with and provided updates to the insured as to settlement opportunities and the risk of liability as required under Florida law.  *Id.*

Second, Ms. Robles attempts to create an issue of fact through contract interpretation by conflating the obligations owed to the insured with obligations owed to the claimant. Ms. Robles maintains that GEICO demonstrated bad faith on part of its insured when it provided her with a release that was not a mirror-image response in strict compliance with her demand letter.  While an overbroad release that does not conform with a claimant's demand letter can create a jury question regarding bad faith, it does not necessarily do so.  *Id.*  And where "federal courts have found a fact issue regarding bad faith based on overbroad release language, they have relied on the insurers' refusal to remove the release's indemnification" all together. *Id.* (internal quotation marks omitted and alteration adopted).

Here, the release did not have the name of the parties and Ms. Gerdjikian specifically asked Ms. Robles to strike through any undesirable language and to send back any changes to GEICO.  Ms. Gerdjikian contacted Ms. Robles seven

times concerning the release before Ms. Roble's imposed deadline on or around August 31, 2021. During these attempted communications, Ms. Gerdjikian inquired about the status of the release and again stated that Ms. Robles could strike any language she found unsatisfactory.

Under Florida law, Ms. Gerdjikian's obligations were merely owed to the insured. *Id.* An insurer "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Berges*, 896 So. 2d at 668-69. When viewed as a whole, Ms. Gerdjikian, on behalf of GEICO, exercised the requisite degree of care and diligence by continuously communicating with Ms. Robles regarding the complained-of release language. Ms. Gerdjikian never refused to remove the language, but instead tried to elicit a release from Ms. Robles that would meet the demands of Ms. Robles and further the conversation. Without a response from Ms. Robles, it is difficult to see how Ms. Gerdjikian put GIECO's interests before the insured's interest when Ms. Robles had the opportunity to draft a release to her own liking.

These facts at worst show ways in which GEICO might improve processing claims—specifically when it comes to handling releases—in the future. The potential need to improve the process cannot be said to rise to the level of bad faith. Even if one were to view GEICO's conduct as imprudent, without more, its

11

conduct falls short of demonstrating bad faith. On the undisputed facts, viewed in a light most favorably to the plaintiff-appellant, Ms. Robles has raised no inference of bad faith to create a genuine issue of material fact.

For the foregoing reasons, we affirm the grant of summary judgment to GEICO.

**AFFIRMED.**